HELEN G. DOW *vs.* BROOKLINE TRUST COMPANY & others.

Norfolk. April 3, 4, 1940. — January 10, 1941.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & RONAN, JJ.

*Pledge. Bills and Notes,* Payment, Renewal. *Payment. Conversion.*

A pledgee of collateral to secure satisfaction of liability of the pledgor as indorser of several notes did not lose his lien by accepting renewal notes upon which the maker without authority had signed the name of the pledgor as indorser; such acceptance did not constitute payment of the original notes.

A provision of a pledge of collateral to secure indebtedness of the pledgor and of a third person, that any balance remaining after the sale of the collateral and payment of the indebtedness so secured should be paid upon order of the third person, did not authorize the pledgee to pay the proceeds of the sale of the collateral, before all indebtedness so secured was paid, to a corporation of which the third person was treasurer and principal stockholder and whose bank account he used for his personal purposes; such payment was a conversion of such proceeds by the pledgee.

Upon unauthorized sale by a pledgee of securities pledged, he was chargeable on an accounting with the pledgor with the market value of the securities at the time of sale together with interest thereon from the date of the sale.

A pledgee of securities was not entitled to a credit, against the amount of his liability for unauthorized payment to a third person of proceeds of the sale of the securities, for payments made by the third person to the pledgor under the guise of interest and dividends for the purpose of concealing the fact of the sale.

Upon an accounting by a pledgee with a pledgor of collateral to secure indebtedness upon a collateral security note, the pledgee, while not justified in selling the collateral for payment of an overdue independent loan to the pledgor secured only by a mortgage of real estate, was entitled to credit in the accounting for the amount due thereon, and, upon receiving such credit, was required to discharge the mortgage and surrender the mortgage note.

BILL IN EQUITY, filed in the Superior Court on November 7, 1938, and afterwards amended.

The case was heard upon the report of a master by *Brown,* J., by whose order there were entered an interlocutory decree confirming the report and a final decree that the defendants Brookline Trust Company, Stephen R. Dow, and Dow Radio Company, Inc., jointly and severally

pay to Helen G. Dow the sum of $58,735 damages and in-
terest in the sum of $10,992.99, together with the costs of
suit, and that execution for those amounts issue in favor
of Helen G. Dow against the said defendants.

*D. R. Pokross,* (*J. C. Storey* with him,) for the defendant
Brookline Trust Company.

*W. C. Rogers,* for the defendants Dow Radio Company,
Inc., and another, submitted their case without argument
or brief.

*H. C. Connor,* (*J. S. Marsh* with him,) for the plaintiff.

RONAN, J. On November 20, 1930, the plaintiff, in order
to enable her husband, the defendant Dow, to borrow money
from the defendant Brookline Trust Company, hereafter
called the bank, gave to the bank an instrument which,
upon the record, is referred to as the blanket authority to
pledge. This instrument authorized the bank to receive
from Dow, as general collateral, security for the payment
of any notes or other liabilities of the plaintiff or Dow,
whether direct or indirect, due or to become due, existing
when said security should be accepted or thereafter to arise.
It contained a blank space for listing the collateral that was
to be pledged, but no collateral was specifically named in this
pledge. This instrument also authorized the bank to hold
the collateral and to dispose of it in such manner as might
be provided in any of the notes or other liabilities for which
it might be pledged. This blanket authority to pledge also
provided: ". . . upon the payment of all such notes and
other liabilities or earlier at the option of the holder thereof,
I authorize said holder to deliver the said collateral, or, if
it has been sold, the balance of the proceeds thereof remain-
ing after the payment of all such liabilities, to the order of
the above named," i.e. Dow. Dow began to borrow from
the bank from time to time upon the collateral, which the
plaintiff furnished at various times in addition to that
pledged at the time the blanket authority to pledge was
given to the bank. On May 20, 1935, Dow owed the bank
three notes, one dated April 16, 1935, for $10,000, and two
dated May 20, 1935, for $9,000 and $10,000 respectively.
All three notes were indorsed by the plaintiff. The bank

on this date also held a noncollateral note of Dow for $100, and a note for $900 of the defendant Dow Radio Company, Inc., signed by Dow, as treasurer, which he had indorsed. The securities pledged under the general authority to pledge were available to the bank as collateral for the payment of these five notes. The securities pledged under this written authority are hereafter referred to as general collateral.

The plaintiff herself had obtained several loans from the bank since 1928, all of which were secured by securities owned by her, except a loan she had obtained in 1931 upon a real estate mortgage. On May 20, 1935, the bank held her note for $5,000 secured by collateral which she had pledged with this note. This collateral is hereafter referred to as special collateral.

A few days before May 20, 1935, she instructed Dow to sell some of her bonds which were deposited as general collateral and with the proceeds to pay her note. The bank upon the order of Dow sold the bonds, paid the proceeds to the Dow Radio Company, Inc., hereafter called the radio company, and took the check of the radio company in payment of her note. The bank returned the note to the plaintiff but retained the special collateral. Dow had signed in her name, but without her knowledge or consent, a memorandum purporting to withdraw this special collateral and a second memorandum purporting to deposit this special collateral with the general collateral. The bank thereafter treated this special collateral as a part of the general collateral. The plaintiff's note, which she paid on May 20, 1935, authorized the bank to hold this special collateral as security for the payment of that note and all other direct or indirect or contingent liabilities of hers to the bank. The bank was authorized by this provision of the note to retain this special collateral, as security, for the payment of her liabilities, as indorser, on the three notes of her husband amounting to $29,000. It should be noted that these three notes of Dow were also secured by the general collateral. These three notes were renewed, and the renewal notes and all other notes thereafter given by Dow to the bank, with a single exception, purported to bear

Mrs. Dow's indorsement. These indorsements were written by Dow and accepted as genuine by the bank. The plaintiff never indorsed any notes after May 20, 1935. She learned from her husband in May, 1935, that the bank was retaining this special collateral for a loan of his from the bank.

Dow had organized the radio company in 1925, largely through funds given to him by the plaintiff, but since 1930 the business had never been profitable. He received $22 a week from the company although there were weeks when he did not get even this amount. He was treasurer of the company and its principal stockholder. His stock in this company had been pledged for a note given to one Green, which is now held by the plaintiff. Dow controlled this company. The company carried an account in the bank and Dow, who had no account at the bank, used the company's account for his personal use.

Soon after the notes held by the bank on May 20, 1935, were renewed, Dow gave orders to the bank to sell portions of the collateral and, acting upon these orders and relying entirely upon the blanket authority to pledge, the bank sold all the general and special collateral except two items which Dow had withdrawn after May 20, 1935, and returned to the plaintiff. None of the sales was made by Dow. These sales began on October 1, 1935, and ended on January 12, 1938. The gross total of these sales amounted to $58,735. No one questions that the sales represented the fair market value of the securities, and we adopt this view. The amounts received from the broker after deducting selling expenses were credited by the bank to the account of the radio company, and the indebtedness of Dow to the bank was paid out of these proceeds by checks of the radio company. The company out of the proceeds of the sales deposited to the account of the plaintiff "over $3,500" as dividends and interest payments on her securities to prevent her from suspecting that they had been sold. The plaintiff did not learn that her collateral had been sold until May, 1938. The bank acted in good faith in the entire transaction.

The bank did not lose its lien to hold the special collateral by accepting new notes in renewal of the three notes indorsed by Mrs. Dow, one dated April 16, 1935, for $10,000, and two dated May 20, 1935, for $9,000 and $10,000 respectively. The bank did not know that the plaintiff's indorsements upon the new notes were unauthorized and their acceptance did not constitute payment of the old notes. *Leonard* v. *Trustees of First Congregational Society in Taunton*, 2 Cush. 462. *Walker* v. *Mayo*, 143 Mass. 42. *Central National Bank* v. *Copp*, 184 Mass. 328. *Bass* v. *Wellesley*, 192 Mass. 526. *Clark* v. *Young*, 231 Mass. 156. *Worster* v. *Perry*, 270 Mass. 371. The bank could hold and apply this special collateral to the payment of the three notes which the plaintiff had indorsed because the terms of her note which was paid on May 20, 1935, authorized the bank to hold this collateral as security not only for the payment of that note but for "all other direct or indirect or contingent liabilities of the" maker that were then or might thereafter become due. The notes were made by Dow and they were therefore secured by the collateral pledged under the blanket authority to pledge. The bank did not lose its right to charge the plaintiff for the amount of these notes by treating the special collateral as general collateral and selling enough of the collateral to satisfy Dow's indebtedness, including that represented by these three notes. *Farrar* v. *Paine*, 173 Mass. 58. *Whitman* v. *Boston Terminal Refrigerating Co.* 233 Mass. 386. *Benj. N. Moore & Sons Co.* v. *Manufacturers National Bank*, 261 Mass. 328. *Perry* v. *Manufacturers National Bank of Lynn*, 305 Mass. 368.

The plaintiff is entitled to an accounting for the value of all her collateral, both special and general. Sales for the purpose of satisfying this indebtedness were authorized by the plaintiff's note which was paid on May 20, 1935, and by the blanket authority to pledge when construed with the provisions of these indorsed notes. During the summer of 1935, Dow secured $1,500 more from the bank, and his total indebtedness on notes secured by Mrs. Dow's collateral remained at $30,500 until it was reduced by various sales

and finally paid on January 13, 1938.   Dow had also obtained various small personal loans from the bank amounting to $900, and the radio company had obtained $3,900 on notes indorsed by him.   The plaintiff's collateral was pledged for the payment of these two sums, but the bank is not entitled to be credited in an accounting with her except for amounts shown by the record to have been paid by applying the proceeds of the sales to the payment of either of these sums.   On these small personal loans the bank is entitled to be credited with the payment of $200 on April 27, 1936, and a payment of $500 on August 16, 1937.   On account of the notes of the radio company it is entitled to be credited with a payment of $200 on February 17, 1936, one for $2,600 on April 27, 1936, and one for $1,000 on January 7, 1937.

The bank had no right to turn over the proceeds of successive sales — whether such sales were authorized or not — of all of this collateral to the radio company in accordance with instructions of Dow.   The plaintiff's note, which authorized the bank to hold and apply the special collateral in satisfaction of Mrs. Dow's liability as an indorser, did not authorize the bank to make any such disposition of the proceeds from the sales of this collateral.   Neither did the bank have any authority to transfer to the radio company the proceeds from the sales of general collateral, until after the satisfaction of all the indebtedness for which it had been pledged.   The right of the bank to hold and apply the general collateral was governed by the blanket authority to pledge.   The plaintiff authorized the bank upon the payment of all notes and other liabilities for which this collateral was pledged, or earlier at the option of the bank, to deliver the collateral to Dow, but if the collateral had been sold then the bank could not turn over to him the proceeds from the sales of any of this collateral until all liabilities for which it had been pledged had been paid.   The parties were bound by the blanket authority to pledge and the bank could hold and apply the general collateral only in accordance with this written authority by virtue of which the collateral had been delivered to the bank.   *Foster* v. *Commercial National*

*Bank,* 248 Mass. 279. *Agricultural National Bank of Pitts-field* v. *Brennan,* 295 Mass. 325. *Killoren* v. *Hernan,* 303 Mass. 93.

The special collateral was sold for $10,797.50. It was held as collateral for the plaintiff's liability, which was somewhat less than three times this amount. The plaintiff's liability as an indorser was approximately eighty per cent of the liability of Dow to the bank. This percentage of Dow's liability was secured by both the special and general collateral. The remainder of his liability was secured by the general collateral alone. The power to sell both the special and general collateral rested ultimately on identical provisions contained in the promissory note made by Mrs. Dow and paid on May 20, 1935, and those subsequently made by Dow or by the radio company and upon which he was an indorser. All the collateral was owned by the plaintiff. Under these circumstances, the extent of the liability of the defendants upon an accounting is unaffected by treating the special and general collateral together.

In all there were sixteen sales of collateral, twelve of which were used to reduce the indebtedness for which the collateral was pledged. The measure of damages where a sale is authorized is the difference between the net amount of the sale (which is the gross sales price less the selling expenses) and the amount applied in satisfaction of the indebtedness for which the collateral sold was pledged, together with interest on this balance from the time of the sale. The turning over to the radio company of these balances without any authority from the plaintiff was a conversion of her money. The proceeds of the remaining four sales of collateral were transferred to the radio company, which retained the money for its own use without applying any of it to the indebtedness for which the collateral was pledged. These sales were not authorized and constituted a conversion of the securities; and the bank is chargeable with the market value of the securities, which in this case is the gross amounts of the sales, together with interest from the dates of the sales. *Varney* v. *Curtis,* 213 Mass. 309. *Whitman* v. *Boston Terminal Refrigerating Co.* 233 Mass. 386. *Koski* v.

*Haskins*, 236 Mass. 346, 348. *Anderson* v. *Home National Bank of Brockton*, 290 Mass. 40, 45.

Interest amounting to $1,545.72 was paid out of the proceeds of some of these twelve sales and the bank is entitled to credit in this amount.

In order to conceal from the plaintiff the sales of her securities, the radio company paid her at various times under the guise of dividends and interest sums aggregating $3,-409.51. The bank is not entitled to any credit on account of these payments. It did not undertake to collect the dividends and none of these payments was paid in its behalf. Its liability was fixed when the four sales were made, and when the proceeds from the other twelve sales were wrongfully turned over to the radio company, and it was not responsible for what either the company or Dow thereafter did with the money. The payments to Mrs. Dow were not made on account of the sales of her property. They resulted from an independent transaction undertaken by Dow with which the bank had no connection. *F. W. Stock & Sons* v. *Snell*, 226 Mass. 499, 504. *Parker* v. *S. G. Shaghalian Co. Inc.* 244 Mass. 19. *Learned* v. *Hamburger*, 245 Mass. 461. *Leader* v. *Kolligan*, 262 Mass. 63. The plaintiff did not accept the payments as a part of the proceeds from the conversion of her property, and the principle that damages on conversion may be reduced by the value of the goods returned by a wrongdoer is not applicable. *Société de Bienfaisance St. Jean Baptiste de Millbury* v. *Worcester County Institution for Savings*, 228 Mass. 556. *Lawyers Mortgage Investment Corp. of Boston* v. *Paramount Laundries Inc.* 287 Mass. 357.

The bank is not entitled to a credit of $848.40 which was the net amount received by the radio company after paying the bank the amount due it from the proceeds of the last sale of the collateral. If the bank had retained the proceeds of previous sales instead of transferring them to the radio company, it would not have been necessary to sell collateral amounting to nearly twice the amount of the debt for which it was pledged. The mistake of the bank in believing that it could transfer the proceeds of the sales to the

radio company after each sale should not be charged against the plaintiff.

We do not accede to the plaintiff's contention that the bank had no right to charge the indebtedness against the proceeds of the sales, because she was not the principal debtor. It is clear from the master's report that the loans would not have been made by the bank unless she furnished the collateral. Her husband had little, if any, financial standing. The radio company had no great financial worth. The blanket authority to pledge, as between the plaintiff and the bank, did not limit the amount or the kind of liabilities that the husband could incur. She could terminate future liability by giving notice to the bank. This she did not do. In a recent case for conversion of the collateral furnished by the plaintiff to a debtor of the defendant, it was said that even if the defendant had converted the plaintiff's collateral "the plaintiff would be entitled only to the value of the security less the amount of the principal obligation. *Whitman* v. *Boston Terminal Refrigerating Co.* 233 Mass. 386, 391." *Anderson* v. *Home National Bank of Brockton*, 290 Mass. 40, 46.

The plaintiff and her husband gave the bank a note secured by a real estate mortgage in October, 1931, maturing in three years, which the bank holds. The proceeds of the mortgage were paid by the plaintiff to discharge one of her notes to the bank. The bank now contends that as it held an overdue note of the plaintiff and her husband it was justified in selling the collateral. It appears from the findings of the master that "The bank never treated the collateral which it held as security for the loans to Mr. Dow as collateral for this mortgage note"; that the mortgage transaction does not further figure in this accounting; and that in making the sales of the collateral the bank relied entirely upon the blanket authority to pledge. It made no objections to these findings of the master or in fact to his report. It is plain that the bank did not exercise any rights it might have had on account of this overdue mortgage. No sale was made to satisfy the mortgage note. We do not think that the contention is now open. *National Mahaiwe Bank* v. *Peck*,

127 Mass. 298. *Spiegel* v. *Beacon Participations, Inc.* 297 Mass. 398, 434.

The bank now contends that the amount due on this mortgage should be determined and included in the accounting. In a bill for an accounting both parties are actors, and the mortgage may properly be considered in ascertaining the balance due the plaintiff with appropriate provisions in the final decree for the delivery of the note and discharge of the mortgage to the plaintiff. *Arwshan* v. *Meshaka,* 288 Mass. 31. *Zuckernik* v. *Jordan Marsh Co.* 290 Mass. 151.

Dow's fraudulent management of his wife's property resulted in a total loss of her securities, and the final decree was right in ordering him to pay the value of these securities together with interest. The radio company wrongfully received money belonging to the plaintiff and it is chargeable in the same amount for which the bank is found liable on account of its aforesaid treatment of the plaintiff's collateral.

The account between the plaintiff and the bank from October 1, 1935, when the sales began, until January 12, 1938, when they ended, may be stated as follows: The bank is chargeable (a) with the gross proceeds from the four sales of collateral held on October 2, 1935, December 4, 1935, December 1, 1937, and December 2, 1937, amounting respectively to $1,375, $1,400, $900 and $585 with interest from the date of each sale; (b) with the excess of the net amounts of sales hereinafter mentioned over the amounts applied to the indebtedness for which the collateral was held, together with interest on said excesses from the dates of such sales: (1) $3,471.33, being the excess after applying $5,000 to Dow's note from proceeds of sale of October 10, 1936; (2) $3,629.11, being the excess after applying $11,700 to notes of Dow and $2,600 in payment of note of the radio company from proceeds of sale of April 27, 1936; (3) $1,195.71, being the excess after applying $500 to Dow's note from proceeds of sale of August 8, 1936; (4) $1,900.75, being the excess after applying $1,500 to Dow's note from the proceeds of sale of September 9, 1936; (5) $1,488.22, being the excess after applying $1,000

to Dow's note and $1,000 to the note of the radio company from the proceeds of sale of January 4, 1937; (6) $2,675.72, being the excess after applying $1,000 to Dow's note from proceeds of sale of March 16, 1937; (7) $1,425.73, being the excess after applying $2,000 to Dow's note from proceeds of sale of June 3, 1937; (8) $1,975.73, being the excess after applying $1,500 to Dow's note from proceeds of sale of August 11, 1937; (9) $341.62, being the excess after applying $1,000 to Dow's note from proceeds of sale of October 18, 1937; (10 & 11) $818.32, being the excess after applying $4,000 to Dow's note from the proceeds of two sales held on November 10 and 12, 1937; and (12) $848.40, being the excess after applying $1,500 to Dow's note from proceeds of sale of January 13, 1938. There should be deducted as principal the sum of $200 as of February 17, 1936, on account of the payment made on that date by the radio company and the further sum of $500 as of August 16, 1937, for payments made by Dow on his personal note, as both payments came from the proceeds of a previous sale of collateral. From the total of these items there is to be deducted the item of interest amounting to $1,545.72 and the amount due the bank upon the real estate mortgage.

The final decree must be reversed. A new final decree is to be entered, ordering the several defendants to pay to the plaintiff the amounts following their respective names, with costs: —

(a) Stephen R. Dow, who is the primary wrongdoer, fifty-eight thousand seven hundred thirty-five dollars ($58,735) as principal, with interest which on January 10, 1941, amounts to fourteen thousand eight hundred sixty-eight dollars and fifty-three cents ($14,868.53);

(b) Dow Radio Company, Inc., twenty-one thousand seven hundred and eighty-four dollars and ninety-two cents ($21,784.92) as principal, with interest which on January 10, 1941, amounts to five thousand four hundred fifty-one dollars and ninety-three cents ($5,451.93);

(c) Brookline Trust Company, twenty-one thousand seven hundred eighty-four dollars and ninety-two cents

($21,784.92) as principal, with interest which on January 10, 1941, amounts to five thousand four hundred fifty-one dollars and ninety-three cents ($5,451.93), from the sum of which principal and interest there is to be deducted the amount shown by further hearing in the Superior Court to be due as principal and interest upon the promissory note of the plaintiff to the said Brookline Trust Company, secured by a mortgage of real estate owned by the plaintiff.

The new final decree shall order the defendant Brookline Trust Company to execute, acknowledge and deliver to the plaintiff a discharge of said mortgage, and to deliver to the plaintiff the original note and mortgage.

The interest will be brought down to the date of the new final decree. *Carilli* v. *Hersey*, 303 Mass. 82, 84. *Boston* v. *Santosuosso*, 307 Mass. 302, 354.

*Ordered accordingly.*