HOWARD CLARK DAVIS vs. NEWBURYPORT FIVE CENTS
SAVINGS BANK & others.

Essex. March 2, 1942. — April 2, 1942.

Present: FIELD, C.J., DONAHUE, QUA, & RONAN, JJ.

*Mortgage*, Of real estate: foreclosure, accounting after foreclosure, accounting by mortgagee in possession. *Equity Jurisdiction*, Accounting.

In a suit in equity by a mortgagor of real estate against a bank mortgagee and three individuals, based on averments that the bank, acting in bad faith and in conspiracy with the individuals to deprive the plaintiff of his property, took possession thereof under the mortgage, later "went through the form of" a foreclosure sale at which it purchased the property at an inadequate price previously agreed upon by the defendants and subsequently conveyed it to the individual defendants at a much higher price, and praying that the sale by the bank to the individual defendants be declared the "actual foreclosure sale" and for an accounting on the basis that the bank had "retained a surplus," upon warranted findings on reported evidence in substance that the bank acted throughout in good faith and with due diligence and that there was no conspiracy, the plaintiff had no right except to an accounting between himself and the bank as to conduct of the property during the period after the bank took possession and until the foreclosure sale, as to taxes paid by the bank previous to the foreclosure and as to any amount remaining due on the note after the foreclosure, treating the sum bid by the bank at the foreclosure sale as the purchase price; and an account should be stated even though it resulted in a balance in the bank's favor.

BILL IN EQUITY, filed in the Superior Court on October 6, 1937, and afterwards amended, against Newburyport Five Cents Savings Bank, hereinafter called the bank, Frederick J. Mahony and Stanley Ward, both individually and as trustees of the Ward Realty Trust, and William H. Dyer.

Averments of the amended bill were in substance that in 1926 the plaintiff gave the bank his note for $100,000 secured by a mortgage on real estate numbered 376–386 Newbury Street in Boston; that he paid $10,000 to the bank on account of principal in July, 1929, and paid all

interest until January, 1932; that during a period approximately from August to October, 1933, "and for some time thereafter," he was seriously ill, incapable of attending to any business matters or of studying legal advertising notices; that on or before August 17, 1933, "the defendants or some of them conspired among themselves to take advantage of" "his illness and to do the things hereinafter alleged"; that on that date the bank entered into possession under the mortgage in the presence of Mahony and Dyer; that Ward, Mahony and Dyer thereafter with the assent and knowledge of the bank took possession and charge of the property, received income therefrom, and converted to their own use some or all of such income; that prior to October 27, 1933, "Ward, Mahony and Dyer agreed with the bank and with one another that they or some of them would buy the property for $130,000 or more and that the bank would lend them the funds wherewith to make the purchase"; that the defendants thereupon planned to prevent the plaintiff "from receiving any profit from such purchase; to manipulate the proposed transaction in such manner that the bank should obtain the profit that would rightfully belong to" the plaintiff, and that "the bank should even threaten to sue" the plaintiff "for an alleged deficiency"; that on October 27, 1933, "the defendants went through the form of foreclosing the mortgage by a purported sale"; that they all knew on that date that a fair value of the property was not less than $130,000 and that Ward, Mahony and Dyer were on that date willing to pay that amount for it; that these three or some of them were present at the foreclosure sale but by prearrangement with the bank refrained from making any bid in excess of $50,000; that the bank bid $50,000 and was declared the purchaser; that the plaintiff "did not receive, either from the bank or from any other source, actual notice that the foreclosure was to take place, and did not know until substantially later that it had taken place"; that thereafter the bank "pursuant to its prior agreement with" the individual defendants "lent to Ward and Mahony $130,000 or more, sold the property" to them

"for $130,000 or more and took back a mortgage for $130,000."

The last three paragraphs of the stating part of the amended bill were as follows: "8. The defendants acted in bad faith toward the plaintiff and to the plaintiff's damage in entering to foreclose, in their conduct while the bank was in possession as mortgagee, in exercising the power of sale contained in the mortgage, in the conduct of the foreclosure sale, and in the sale to Ward and Mahony. 9. Ward, Mahony, and Dyer have converted funds, the property of the plaintiff, in amounts unknown to the plaintiff; and the bank has retained a surplus, the property of the plaintiff, amounting to $40,000 or more, the exact amount whereof is unknown to the plaintiff. 10. The bank has brought an action at law in the Superior Court . . . against the plaintiff to recover an alleged deficiency arising out of the foreclosure sale."

The prayers of the bill were that the bank be enjoined from prosecuting the action at law against the plaintiff "and that the rights of the parties be finally adjudicated and determined by this proceeding in equity"; that the sale of the property in question by the bank to Ward and Mahony be declared "the actual foreclosure sale"; that "an accounting be ordered between all the defendants and the plaintiff; and that a decree be entered establishing the amount or amounts which may be found by the accounting to be due to the plaintiff, and ordering the several defendants to pay the same."

The suit was heard by *Collins*, J., and by his order a final decree was entered dismissing the bill. The plaintiff appealed. The evidence was reported. The judge at the plaintiff's request made a report of material facts found by him.

*W. Powers*, for the plaintiff.

*J. W. Sullivan*, (*P. I. Lawton* with him,) for Newburyport Five Cents Savings Bank.

*W. Hartstone & H. N. Hartstone*, for the defendants Mahony and others, submitted a brief.

RONAN, J. Davis obtained a loan of $100,000 from the

Newburyport Five Cents Savings Bank, in 1926, which was secured by a mortgage upon two apartment houses, on Newbury Street, in Boston. He paid $10,000 on the principal in 1929, and the bank extended the term of the mortgage to July 15, 1932. The interest was paid regularly up to January 2, 1932. In August, 1932, Davis paid $100 on account of the mortgage. He made no other payments. The bank began to press him for payments and to insist upon more security. The receipts from the property were far from sufficient to pay the carrying charges. Davis had offered, in 1932, to convey the property to the bank but the latter did not desire to take over the property. In July, 1933, the defendant Dyer, who was associated with the defendants Ward and Mahony in a corporation engaged in the management of apartment properties, made, at the request of the bank, a survey of these premises. The bank made an entry on August 17, 1933, to foreclose its mortgage and on August 21, 1933, wrote Davis to that effect. It made extensive repairs on the premises, about one half of which were completed on October 27, 1933, when the foreclosure sale was held and the property sold to it upon its bid of $50,000. The property was conveyed to the bank on November 14, 1933. It conveyed the premises to the Ward Realty Trust, which was composed of the individual defendants, on January 10, 1934, taking the demand note of the trust for $130,000 secured by a mortgage upon the premises. The bank sued Davis for a deficiency upon his note, and he filed this bill in equity for an accounting and to enjoin the bank from prosecuting the action at law. The suit and action were tried together under a stipulation that the judge should make such an order as would effectually dispose of the entire matter. The judge made findings in the suit in equity and ordered the bill dismissed. He also found that, if the decree in equity "ultimately prevails," the bank was entitled to a judgment of $40,658.15 with interest at the rate of six per cent per annum from August 25, 1932. The plaintiff appealed from a final decree dismissing the bill.

The plaintiff contends that he is entitled to an accounting in which he should be credited with $130,000 as the

price at which the property was sold or ought to have been sold at the foreclosure sale. The bill, however, was brought not to set aside the sale or to redeem the property but to recover for any surplus in the hands of the bank from the foreclosure sale. *Clark* v. *Simmons,* 150 Mass. 357. *Bon* v. *Graves,* 216 Mass. 440. *Russell* v. *Bon,* 221 Mass. 370. The plaintiff by bringing this bill affirms the sale and by this bill seeks an accounting of the alleged surplus arising from the sale. The validity of the sale is not open to attack upon such a bill. *O'Connell* v. *Kelly,* 114 Mass. 97. *Alden* v. *Wilkins,* 117 Mass. 216. *Cook* v. *Basley,* 123 Mass. 396. *Goldman* v. *Damon,* 272 Mass. 302. *Chute* v. *Cronin,* 273 Mass. 471. *Brooks* v. *Bennett,* 277 Mass. 8. *Barry* v. *Dudley,* 282 Mass. 258. The bill in equity was tried together with the action at law to recover the balance due upon the mortgage note, and Davis in his answer alleged that the bank acted in bad faith and improperly conducted the foreclosure sale and had received therefrom an amount in excess of the amount of the note. The good faith and diligence of the bank in the foreclosure proceedings taken by it were thus presented for decision. *Vahey* v. *Bigelow,* 208 Mass. 89. *Johnston* v. *Cassidy,* 279 Mass. 593. *Cambridge Savings Bank* v. *Cronin,* 289 Mass. 379. *Chartrand* v. *Newton Trust Co.* 296 Mass. 317. *Ross* v. *Vadeboncoeur,* 298 Mass. 523. *Atlas Mortgage Co.* v. *Tebaldi,* 304 Mass. 554.

The account could be stated and adjudicated in the bill in equity, and a decree could be entered ordering the party found to be indebted to the other to pay the amount of such indebtedness or, if the balance was found in favor of the bank, judgment could be entered in the action at law for such balance, and a decree could then be entered dismissing the bill with costs. The plaintiff, of course, could not be credited in both the suit and the action with the items for which the bank was found to be indebted to him. *Hebert* v. *Dewey,* 191 Mass. 403. *Raymond Syndicate, Inc.* v. *American Radio & Research Corp.* 263 Mass. 147. *Poorvu* v. *Weisberg,* 286 Mass. 526.

The judge made a report of the material facts and refused to adopt the suggestions of the plaintiff to add certain other

matters to his report. We do not know what was contained in these suggestions, but a judge cannot be compelled to include in the report matters that he did not consider material in reaching a decision. The report according to the statement of the trial judge contained all the material facts found by him. There is nothing in this respect for a judicial review. *Plumer* v. *Houghton & Dutton Co.* 277 Mass. 209. *Merrill* v. *Everett*, 293 Mass. 327. The appeal is before us with not only a report of the material facts but also a full report of the evidence. The plaintiff has argued that the findings of fact are obscure unless explained by the exhibits or testimony and are incomplete as not containing facts that he submits are essential. The appeal with a full report of the evidence brings before this court not only all questions of law but all questions of fact, and this court will examine the evidence and decide the case according to its own judgment, giving due weight to the findings of the trial judge, which are not to be reversed unless plainly wrong. The evidence has been studied in the light of these familiar principles. It need not be fully summarized. A careful examination of the testimony furnishes no reason for doubting the soundness of these findings apart from the finding as to the amount due on the note which will be hereafter discussed. These findings, with the single exception just referred to, must be adopted as true.

The plaintiff admits that there was a literal compliance with the terms of the mortgage in making the foreclosure sale, but he alleges that the bank was not acting in good faith; that, having an opportunity to sell the property for $130,000, it should not have bid it in for $50,000; and that it entered into a conspiracy with the remaining defendants to sell them the property at the larger amount after the bank had become the owner. Of course, mere formal compliance with the provisions of the mortgage would not be a defence if the bank did not act in good faith or with reasonable diligence to protect the rights of the plaintiff. *White* v. *Macarelli*, 267 Mass. 596. *Krassin* v. *Moskowitz*, 275 Mass. 80. *Sandler* v. *Silk*, 292 Mass. 493.

The plaintiff contends that the three individual de-

fendants, or the trust which they represented, were willing at the time of the foreclosure sale to purchase the property for $130,000 and that the bank had knowledge of this fact. Whether such a contention could be supported by the evidence depended to a considerable extent upon the market value of the premises at the time of the foreclosure sale. There was testimony that the property was in a dilapidated condition in the middle of July, 1933. All but one of the twenty-four apartments were vacant, and the single tenant was an old lady who, although in arrears for rental, was allowed to continue in occupancy. The plaintiff testified that he had given notice to quit to all the tenants and a notice to the janitor to leave as he had a plan to change the property into forty-eight suites; and that he had shown a blue print of the proposed changes to the president of the bank who refused to furnish $25,000 which the plaintiff estimated would be the cost. The judge, however, in view of the attitude, promises and dealings of the plaintiff with the bank after he had ceased to pay interest when due, the various activities of the plaintiff and his financial situation, was not required to believe that the plaintiff was able to secure the necessary cost of making these improvements or that they were feasible, or that they would not have cost considerably more than the amount mentioned or, in fact, that the plaintiff intended to make the improvements. There was evidence that when the bank took possession on August 17, 1933, the roof was in bad condition; that all or a part of the ceilings in every room under the leak on each of the four stories was on the floor; that the floors were warped; that the fixtures in many instances were broken and tarnished; that the plumbing was not in working condition; that parts of the steam boiler were missing; and that the painting and paper were in bad condition. There was considerable evidence of the market value of the property when the bank took possession and when it held the foreclosure sale. The bank was the only bidder at the sale and its bid of $50,000 was subject to unpaid taxes which amounted to several thousand dollars. The judge found that the amount bid was neither unreasonable nor

unconscionable; that the real value of the property when conveyed to the trust on January 10, 1934, scarcely exceeded two thirds of $130,000; that there was no ready market for this property in 1933; that if there had been other advertising of the foreclosure sale in addition to the usual foreclosure notices it would not have produced an available customer; that an accurate statement as to the fair market value of the property at the time of entry and sale could not be made on account of the depressed condition of the real estate market, not only in the vicinity of the locus but throughout Boston; and that the bank was desirous of protecting its security but had no intention of depriving Davis of any rights he may have wished to exercise as mortgagor.  These findings establish that the bank was acting in good faith with due diligence in foreclosing the mortgage and in becoming the owner of the property. *Johnston* v. *Cassidy,* 279 Mass. 593.  *Cambridge Savings Bank* v. *Cronin,* 289 Mass. 379.  *Chartrand* v. *Newton Trust Co.* 296 Mass. 317.  *Ross* v. *Vadeboncoeur,* 298 Mass. 523.  *Atlas Mortgage Co.* v. *Tebaldi,* 304 Mass. 554.

We now consider the plaintiff's contention that the defendants had entered into a conspiracy to deprive him of his property.  According to the testimony, the three individual defendants had been engaged for several years in the real estate business and especially in the management of apartment property.  They did business by means of a corporation, although they regarded themselves as partners.  They formed the Ward Realty Trust in May, 1933, for the purpose of taking over "distressed properties" from the banks when the estimated income appeared sufficient to enable the trust to operate the properties, giving back mortgages for the entire purchase prices and receiving from the banks agreements that the banks would look entirely to the properties for the payment of the mortgage notes.  The defendant bank dealt with these defendants with another parcel of Boston real estate which it transferred to this trust on October 27, 1933.  The defendant bank had requested Dyer in the middle of July, 1933, to make a survey of the mort-

gaged premises, which he did in conjunction with the other two defendants. Two of these defendants were witnesses to the entry made by the bank, and on that day the bank hired the corporation to supervise the repairs and improvements and to manage the property. It was necessary to start the repairs at once in order to have the property tenantable before the renting season closed. None of these individual defendants made any bid although some of them attended the sale. They were not prevented by the bank from bidding. While they may at the time of the sale have hoped that the bank would eventually transfer the property to the trust, yet the bank at that time had not indicated that it would do so and had made no arrangement whatever with them concerning any subsequent action that it might take in regard to the disposition of the property. They never intended to purchase the property at the foreclosure sale. They did not acquire titles by foreclosure sales but dealt with the banks themselves in reference to such properties as the banks might be willing to convey to the trust. See *Skolnick* v. *East Boston Savings Bank*, 307 Mass. 1. The judge found that there was no available market for this property at the time of the foreclosure sale or during the subsequent months; that prior to December, 1933, the bank was under no legal or moral obligation to transfer the property to the individual defendants or to the trust; that on December 22, 1933, or shortly thereafter, an agreement was made by the bank to convey the property to the trust; that the officers of the bank and the trust, despite official votes, reports and records, considered $130,000 as a fictitious value; and that the real value "scarcely exceeded two thirds of this sum." He also found that the plaintiff had failed to show that the bank had acted in bad faith in taking possession or while in possession or in conducting the foreclosure sale or in the sale to the trust. He further found that no conspiracy had been shown between the officers or agents of the bank and any of the other defendants. None of these findings can be said to be plainly wrong. They negative the material allegations in the bill and similar averments in the answer in the action at law.

The bank is not shown to have violated any duty that it owed the plaintiff in the proceedings taken to foreclose its mortgage and the subsequent sale of the mortgaged property to the trust. They dispose of the plaintiff's contention that he was entitled to charge the defendants with $130,000 as the price that the bank received or ought to have received at the foreclosure sale. *Antoine* v. *Commonwealth Trust Co.* 266 Mass. 202. *Cambridge Savings Bank* v. *Cronin,* 289 Mass. 379. *Gordon* v. *Harris,* 290 Mass. 482. *DesLauries* v. *Shea,* 300 Mass. 30. *Fleming* v. *Dane,* 304 Mass. 46.

It follows from what has been said that the interest that the plaintiff had in the property passed to the bank when it became owner of the property. The bank was not required to hold the property. It was authorized by G. L. (Ter. Ed.) c. 168, § 54, Twelfth, to convey the property and to take back a mortgage for the full purchase price. Even if the conveyance to the trust ought not to have been based upon a valuation that was fifty per cent in excess of the true value of the property, yet no harm therefrom resulted to the plaintiff. No rights accrued to him from the manner in which the bank dealt with its own property. *McCarthy* v. *Simon,* 247 Mass. 514. *Steiner* v. *Schrank,* 253 Mass. 551. *Johnston* v. *Cassidy,* 279 Mass. 593. *Gordon* v. *Harris,* 290 Mass. 482.

The bank, having entered and taken possession of the plaintiff's property and having sold it in foreclosure, became obligated to account for all moneys received and expenses incurred by it in dealing with the mortgaged premises. G. L. (Ter. Ed.) c. 244, § 20. *Hood* v. *Adams,* 124 Mass. 481. *Dennett* v. *Perkins,* 214 Mass. 449. *Weiner* v. *Slovin,* 270 Mass. 392. The parties were entitled to have the account stated and the balance due from one party to the other determined. *Chopelas* v. *Chopelas,* 294 Mass. 327. *Dow* v. *Brookline Trust Co.* 308 Mass. 90. *Milbank* v. *J. C. Littlefield, Inc.* 310 Mass. 55.

At the trial counsel agreed, apparently with the approval of the judge, that if the plaintiff is entitled to an accounting such an accounting will be had at some later stage of the proceeding when each item of the account may be considered.

The efforts of counsel and the attention of the judge seem to have been focused upon the main contention made by the plaintiff that he was entitled to the credit of $130,000. In fact no accounting was had at the trial. The judge made a finding in the equity suit that if the decree dismissing the bill "ultimately prevails" then the bank was to have judgment in the action at law in the principal sum of $40,658.15, with interest from August 25, 1932. This finding resulted from deducting from $90,000, the principal of the note, $49,341.85, the net amount of the foreclosure sale. It corresponds to an entry appearing upon the note as set forth in the answer of the bank, although the note itself did not contain any such entry. But it is plain that this finding did not include various items appearing in different parts of the record, some of which were not in dispute, and which ought to have been considered in determining the accounting. On the other hand, the record itself, obviously on account of the manner in which the trial proceeded, does not purport to set forth fully matters that must be regarded in stating an account, and so prevents us from settling the account. The case must be remanded to the Superior Court to determine an accounting between the parties from August 17, 1933, when the bank entered and took possession, to November 14, 1933, when the bank completed the foreclosure by recording the foreclosure deed. The bank is to be credited with the principal and interest due on the note up to November 14, 1933; the plaintiff is to be credited with $50,000, the amount of the purchase price at the foreclosure sale, less the proper expenses incurred by the bank in connection with the sale, together with $500 which the bank under the terms of the mortgage was entitled to deduct from the amount of the sale; the bank is to be charged with the rentals received from August 17, 1933, to November 14, 1933, less a reasonable charge for their collection; the bank is to be credited with such sums as were reasonably expended in making necessary repairs to prevent decay and destruction of the property, such as were incurred in making the property weathertight and in preventing it from getting into a worse condition at the time of the sale than it was at

the time of the entry, but not for plumbing, plastering or interior renovations such as painting or papering, or for outside repairs such as sand blasting or painting. The bank should be allowed for any other necessary expenses in the care and management of the property. It is also entitled to be credited for all amounts expended prior to the foreclosure sale for taxes and in discharging tax titles to the property for which it has not been reimbursed by the plaintiff. The balance found due to the bank is to bear interest from November 14, 1933. G. L. (Ter. Ed.) c. 244, § 20. *Woodward* v. *Phillips*, 14 Gray, 132. *Bangs* v. *Fallon*, 179 Mass. 77. *Fletcher* v. *Bass River Savings Bank*, 182 Mass. 5. *O'Brien* v. *McNeil*, 199 Mass. 164. *Gilpin* v. *Brooks*, 226 Mass. 322. *Beal* v. *Attleborough Savings Bank*, 248 Mass. 342. *City Institution for Savings* v. *Kelil*, 262 Mass. 302. *Shanberg* v. *Automobile Ins. Co.* 285 Mass. 316. *Wiggin* v. *Lowell Five Cent Savings Bank*, 299 Mass. 518. *Altobelli* v. *Montesi*, 300 Mass. 396. *Natick Five Cents Savings Bank* v. *Bailey*, 307 Mass. 500.

The final decree is reversed. The plaintiff has sought an accounting and further hearings must be had to settle the account. A decree is to be entered stating the account even though a balance may be found due to the bank. *Chopelas* v. *Chopelas*, 294 Mass. 327. On this appeal in the equity suit the action at law is not before us. Of course, the Superior Court will order such judgment in the action at law as will be consistent with the final decree in this suit.

*Ordered accordingly.*