HENRY E. BROOKS *vs.* ELIZA M. BENNETT & another.

Middlesex. May 18, 1931. — September 22, 1931.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Mortgage*, Of real estate: foreclosure. *Estoppel. Deed. Equity Jurisdiction*, Accounting by mortgagee for surplus at sale. *Evidence*, Competency, Extrinsic affecting writings. *Equity Pleading and Practice*, Answer, Findings by judge.

Statement by RUGG, C.J., of the procedure in and effect of a sale of land in foreclosure of a mortgage under G. L. c. 244, §. 14.

It was *held*, in a suit in equity by a junior mortgagee of land against a prior mortgagee for an accounting of the proceeds of a sale of the land in foreclosure of the defendant's mortgage, that the defendant's answer did not admit the allegations in the bill concerning what took place at the sale, but was broad enough to permit him to prove what in truth took place thereat.

Where it appeared that a notice of a sale in foreclosure of a third mortgage of a parcel of land stated that the premises were subject to the first and second mortgages and would be sold subject to all encumbrances and interest on the other mortgages; that bids received by the auctioneer at the sale were sums above the first and second mortgages and were for the title to be conveyed by the foreclosure of the third mortgage subject to the other mortgages and for the right to redeem the land from those mortgages; and that no party in interest was misled or suffered injury by what took place at the sale, it was *held*, in a suit in equity by the holder of a fourth mortgage against the third mortgagee for an accounting of the proceeds of the sale, that, although the foreclosure deed by the defendant to the successful bidder at the sale purported to convey the premises, subject to the first and second mortgages, for a sum equal to the amount of the grantee's bid plus the sum due on the other mortgages and the affidavit accompanying the deed stated that the premises had been sold by the auctioneer to the grantee for such large sum, the defendant, under appropriate allegations in his answer, was not estopped to show the actual amount bid and paid at the sale by the grantee; distinguishing *Feuer* v. *Capilowich*, 242 Mass. 560, and *Antonellis* v. *Weinstein*, 258 Mass. 323.

The recitals in the deed and affidavit above described as to the amount bid at the sale and paid as consideration for the deed were evidentiary only and might be contradicted by any party thereto; and the oral evidence to explain or modify those recitals was competent.

BILL IN EQUITY, filed in the Superior Court on March 3, 1930, for an accounting of the proceeds of the sale of land in foreclosure of a mortgage.

Certain paragraphs of the bill were as follows:

"Fourth.   Pursuant to said advertisement, the said defendant, Eliza M. Bennett, caused the said real estate to be sold at public auction, in accordance with the terms of said notice, by Bernard Mullen, an auctioneer, to the defendant, A. Dudley Bagley, for the sum of $2,200 bid by him, being the highest bid made therefor at said auction sale.

"Fifth.   That thereafter, on January 7, 1930, the defendant, Eliza M. Bennett, executed a foreclosure deed of the said premises to the said defendant, A. Dudley Bagley, conveying the premises conveyed by said mortgage which was foreclosed, subject to the first mortgage of $1,200 and the said second mortgage of $800 and subject to any and all encumbrances, restrictions, interest due on first and second mortgages, unpaid taxes, water liens, tax titles and liens, if any there be, and which was duly recorded with Suffolk Deeds on January 8, 1930.

"Sixth.   That at the time and prior to said sale, there was and is now due to the plaintiff the sum of $1,095, principal and interest, on the said fourth mortgage and note secured thereby, and that prior to the time of said sale, the said defendants had full knowledge and notice of the mortgage held by the plaintiff and that the plaintiff made claim to the proceeds of said sale in excess of the amount due upon said mortgage, which was foreclosed by said Eliza M. Bennett.

"Seventh.   The plaintiff says there is in the hands of said defendants the sum of $2,200, being the proceeds of said foreclosure sale less the amount due on the mortgage which was foreclosed, namely, $200, plus the expenses of the sale, leaving a sum in the hands of the defendants sufficient to pay the amount due the plaintiff, namely, $1,095, which the plaintiff is entitled to have in payment of his said mortgage and the note secured thereby."

Certain paragraphs of the defendants' answer, as amended, were as follows:

"4. The defendants admit that the defendant Bennett caused the said real estate to be sold at public auction on

January 7, 1930, by Bernard Mullen, an auctioneer, but they deny that said premises were sold to the defendant Bagley for the sum of $2,200, subject to said first and second mortgages, and they say that, by the mutual mistake of the defendants Bennett and Bagley, the sum of $2,200 was bid by said Bagley for the premises free and clear of said first and second mortgages which were to be paid by the defendant Bennett out of said sum of $2,200. They further say that the defendant Bennett accepted said bid as a bid for said real estate free and clear of said first and second mortgages and is ready to pay said first mortgage and to discharge said second mortgage in accordance with the understanding between herself and said Bagley. They deny all of the other allegations of said fourth paragraph. And they further say that the bid made by said Bagley and accepted by the said Bennett through the auctioneer at said foreclosure sale was $250 above the encumbrances figured by said auctioneer to be $1,950, which made the total value of the premises including all encumbrances $2,200, and by their mutual mistake said foreclosure deed recited the bid of said Bagley as $2,200 instead of $250.

"5. The defendants admit that the defendant on January 7, 1930, executed a foreclosure deed to the defendant Bagley as alleged in the fifth paragraph of the bill. They deny all of the other allegations of said paragraph. They say that by their mutual mistake said deed was made subject to said first and second mortgages when their intention was that the premises should be conveyed free and clear of said mortgages.

"6. The defendants deny the allegations of the sixth paragraph of the bill.

"7. The defendants deny the allegations of the seventh paragraph of the bill."

The suit was heard by *McLaughlin,* J., a stenographer having been appointed under G. L. c. 214, § 24; Equity Rule 29 (1926). There was testimony that, after the auctioneer read the notice of the sale and called for bids, there was a bid of $2,000; that the auctioneer asked the bidder if he meant $2,000 above encumbrances, where-

upon the bidder replied in the negative, that he meant $2,000 for "the whole thing"; that the auctioneer then said he would take the bid as $50, explaining that the amount of the encumbrances and expenses of sale amounted to about $1,950; that what he said to the bidder was said publicly so that everyone could hear him; that another bidder then bid $150, "that will make $2,100"; that a third bidder then bid $250 subject to encumbrances, meaning "$2,200 for the whole thing." The judge's findings were as follows:

"The plaintiff . . . was the holder . . . of a fourth mortgage . . . in the sum of $1,000 on certain property . . . .

"The mortgages antecedent thereto were, first, one to the Sumner Savings Bank in the sum of $1,200, a second to Eliza M. Bennett written in the sum of $800, on which was actually due about $587, a third mortgage to Eliza M. Bennett in the sum of $200, and the fourth held by the plaintiff in the sum of $1,000.

"On December 11, 1929, said Eliza M. Bennett, holder of the said third mortgage in the sum of $200, began foreclosure proceedings by publication, causing a notice to be published that said real estate would be sold at a mortgagee's sale on the premises, and so forth, for breach of conditions, describing the premises as being subject to two mortgages, the first of $1,200 to the Sumner Savings Bank, and the other of $800 to Eliza M. Bennett, and also subject to any and all encumbrances, restrictions, interest due on first and second mortgages, and so forth.

"The bill then proceeds to allege that pursuant to the advertisement the said Eliza M. Bennett caused said real estate to be sold at auction to the defendant A. Dudley Bagley in the sum of $2,200 as the highest bidder; that by foreclosure deed the premises were conveyed by said Bennett to Bagley subject to the first mortgage of $1,200 and the second of $800, and the plaintiff claims that there is now in the hands of the defendants the sum of $2,200, the proceeds of said foreclosure sale, less the amount due on the Bennett third mortgage for $200, plus the expenses

of the sale, leaving a sum in the hands of the defendants sufficient to pay the plaintiff the sum of $1,095, the amount of his mortgage with interest.

"It should be said at this point that the foreclosure deed executed by Eliza M. Bennett seems to purport on her part to convey the premises as grantor to A. Dudley Bagley for $2,200 subject to two mortgages, the first of $1,200 to the Sumner Savings Bank, and the other of $800 to Eliza M. Bennett.

"The affidavit of Mrs. Bennett accompanying the deed sets forth a copy of the published notice of the mortgagee's sale, stating that the premises were subject to two mortgages, the first of $1,200 to the Sumner Savings Bank, the other of $800 to Eliza M. Bennett, and furthermore that the mortgaged premises were sold by . . . an auctioneer to A. Dudley Bagley for $2,200.

"At the hearing before me the testimony was addressed principally to the question as to what occurred at the auction sale, and as to that I find the material facts were as follows:

"One . . . [bidder] bid $50 above the two antecedent mortgages which amounted approximately to $1,950. . . . [Another bidder] bid $150 above the mortgages, and A. Dudley Bagley, the defendant, to whom the property was knocked down and the title subsequently conveyed, bid $250 above the encumbrances. His bid was accepted as the highest, and he paid that amount.

"It is plain to me from the evidence that Bagley bid $250 for Mrs. Bennett's $200 mortgage and the right to redeem it; that that was the highest bid, was accepted by the auctioneer and later paid by Bagley and title taken by him."

By order of the judge a final decree was entered dismissing the bill. The plaintiff appealed.

*J. B. O'Hare,* for the plaintiff.

*J. M. Maloney,* for the defendants.

RUGG, C.J. This is a suit in equity for an accounting of the proceeds of the sale by foreclosure of a mortgage on real estate. The plaintiff was the holder of a fourth mortgage

on certain real estate. Antecedent mortgages were a first mortgage to a savings bank in the sum of $1,200, a second mortgage written in the sum of $800 on which was actually due about $587, and a third mortgage in the sum of $200, the two latter being held by the defendant Bennett. In December, 1929, the defendant Bennett as the holder of the third mortgage began to exercise the power of sale therein contained by causing notice to be published according to law that the real estate would be sold on January 7, 1930, for breach of condition of the third mortgage, the premises being described in the advertisement as subject to the first mortgage and the second mortgage already described, and that the premises would be sold "subject to any and all encumbrances, restrictions, interest due on first and second mortgages." The sale was held as advertised. The foreclosure deed executed by the defendant Bennett purported to convey the premises to the defendant Bagley for $2,200 subject to two mortgages, the first of $1,200 to the savings bank and the other of $800 to the defendant Bennett. The affidavit accompanying the deed set forth copy of the published notice of the sale by foreclosure, with the statement of the two encumbrances heretofore described, and stated that the mortgaged premises were sold by the auctioneer to the defendant Bagley for $2,200. At the hearing before the trial judge testimony was introduced touching occurrences at the auction sale, and the facts were found to be as follows: One bid was made of $50 above the two antecedent mortgages, another of $150, and the third by the defendant Bagley for $250, which was the highest bid made, and the title was conveyed to him. He paid the amount of his bid. This finding was in the main in accordance with the testimony of the auctioneer as to what he said at the foreclosure sale and the form in which the bids were received. It follows from this finding that no one rightly could have been misled by what took place at the auction. In substance and effect the trial judge found that this $250 was paid for the title conveyed by foreclosure of the $200 mortgage subject to the two earlier mortgages and the right to redeem the land thus conveyed from those mortgages. The judge ruled upon

the facts as thus found that the mortgagee who sold under power of sale subject to prior encumbrances was not estopped merely because of the erroneous recital of the consideration in the deed or in the affidavit of sale from showing the actual amount bid and paid at the sale. It was agreed that, if the view taken by the trial judge was correct, there was no occasion for accounting, as the actual expenses of the sale exceeded the difference between the amount paid by the defendant Bagley and the amount of the third mortgage held and foreclosed by the defendant Bennett. Therefore a decree was entered dismissing the bill with costs. The plaintiff's appeal brings the case here.

There is nothing in the plaintiff's contention, based on Equity Rule 6 (1926), to the effect that the answer of the defendants bound them to the proposition that the bid was $2,200 above the first and second mortgages and prevented them from showing by evidence what in truth took place at the auction sale. The answer was broad enough to permit proof of such facts as were found by the trial judge.

The plaintiff has argued at length that these findings of fact are not warranted by the evidence. It is not necessary to recite, or to summarize, or to analyze the evidence. It was largely oral, given by witnesses testifying in the presence of the trial judge. It has been examined in the light of the familiar and controlling principle of law that an appeal from a decree in equity with a full report of the evidence brings before this court questions of fact as well as questions of law, and that this court must examine the evidence and decide the case according to its own judgment, giving due weight to the findings of the judge, and that, where the case has been tried on oral testimony, the decision of the trial judge will not be reversed unless plainly wrong. In the light of that principle it is clear that there is no sufficient reason for doubting the soundness of the findings of fact made. They are adopted as true.

No discussion is required to show that, under our earlier decisions touching the foreclosure of mortgages, the ruling of the judge upon the facts found was right. *O'Connell* v. *Kelly*, 114 Mass. 97. *Alden* v. *Wilkins*, 117 Mass. 216.

*Cook* v. *Basley*, 123 Mass. 396. *Skilton* v. *Roberts*, 129 Mass. 306, 309. *Donohue* v. *Chase*, 130 Mass. 137. The binding authority of those decisions has never been doubted or shaken. The statutory regulations as to the foreclosure of mortgages by the exercise of a power of sale at the time of those decisions were much less specific than those now in force.

Procedure as to foreclosure of mortgages was at the time of the transactions here in issue, and is now, governed by G. L. c. 244, § 14. That section is a substantial reënactment, with only perfecting verbal changes, of St. 1918, c. 257, § 439, which did not become effective until the enactment of the General Laws (St. 1919, c. 5; St. 1920, c. 2), and which in turn first appears as § 463, at pages 180–182, in Vol. II of the Preliminary Report of the Commissioners to Consolidate and Arrange the General Laws (under chapter 43 of the Resolves of 1916). In a note appended to said § 463 the commissioners state, among other matters, in substance that the method of foreclosure by exercise of the power of sale in mortgages of real estate is inadequately set forth in the then existing statute, and that confusion and uncertainty have resulted, and that the proposed section "is suggested for the purpose of making definite the statute law as affected by the decided cases, incidentally settling some disputed points, and clearly indicating an exact method of procedure. It furnishes a standard form of notice of the sale and establishes the effect of a deed given thereunder, and is believed to be in the interest of uniformity, brevity and clearness." The provisions of G. L. c. 244, § 14, after regulating the publication of the notice of foreclosure and the form of such notice, declare the effect of a sale held pursuant to such notice in these words: "the premises shall be deemed to have been sold, and the deed thereunder shall convey the premises, subject to and with the benefit of all restrictions, easements, improvements, outstanding tax titles, municipal or other public taxes, assessments, liens or claims in the nature of liens, and existing encumbrances of record created prior to the mortgage, whether or not reference to such restrictions, easements, improvements, liens or encumbrances is made in

the deed." The import of these statutory words is that all that can be sold in execution of a power of sale in a mortgage is the title conveyed by the mortgagor by the mortgage subject to the specified restrictions. The holder of a mortgage is empowered to sell, under the power contained in the mortgage, the whole title of the mortgagor and of himself. In other words, he may and must sell the equity of redemption of the mortgagor or of his grantee, and whatever interest has passed under the mortgage to its holder. The bids made at such sale must be for that which is to be sold and for that alone; that is to say, the bids must be for the value of the interest in the estate which will pass under the foreclosure deed. If there are prior mortgages, these cannot be sold, and their amount ought not to be included in the bids. The same is true of taxes, assessments and liens, and whatever else may be superior to the mortgage being, foreclosed. They must all be excluded from the amount of the bids. The bids in amount are and must be net and not gross. The form of the notice of a mortgagee's sale of real estate set forth in said § 14 conforms to the other provisions of that section and makes plain that which is to be sold. All this is made clear beyond peradventure by the terms of the statute. *Goldman* v. *Damon*, 272 Mass. 302.

This mandate of the statute ought not to be made an instrument of injustice. If its terms are not followed, or the sale is not conducted in good faith, the mortgagor or those standing in his shoes may have the sale set aside in equity. *Bon* v. *Graves*, 216 Mass. 440. *Russell* v. *Bon*, 221 Mass. 370. If, however, the mortgagor (including those standing in his shoes) seeks to recover a surplus alleged to have been received by the sale, he affirms the sale notwithstanding irregularities. *Alden* v. *Wilkins*, 117 Mass. 216. In such case, if by mistake or ignorance the mortgagee has failed in some particular to conform exactly to the statute to his own harm, it would be inequitable to hold him responsible to account for money or assets which he has in truth and fact never received, provided no party in interest has been misled or suffered injury. This doctrine was applied in *Chute* v. *Cronin*, 273 Mass. 471. That

was a proceeding in equity where the plaintiff as trustee in bankruptcy of the mortgagor sought to recover of the mortgagee on the basis that the bid made by him was for the equity of redemption. It was found as a fact that that bid was made and intended to absorb the debt secured by a prior first mortgage and the debt secured by the mortgage which was being foreclosed, and that in truth the mortgagee had received nothing beyond the satisfaction of the debt secured by the mortgage which he had foreclosed. An examination of the original papers in that case shows that there was no evidence to support an inference that any one was misled, that the plaintiff suffered any harm, or that elements of estoppel existed. Although the terms of the statute had not been strictly followed, the plaintiff by bringing the suit in effect affirmed the sale and it was held that the defendant could show the true situation and, having shown that in fact he had no surplus, he had nothing for which to account and the bill was dismissed.

In a case of this nature oral evidence to explain or modify the statement in the instruments of foreclosure touching the amount bid at the sale and the payment for the deed was admissible in the circumstances. The rule that written instruments cannot be varied by parol is not thereby infringed. The recitals in the deed and in the affidavit as to the amount bid at the sale and paid as consideration for the deed are evidentiary only, do not work a mutual estoppel, and may be contradicted by any party thereto. It was competent for the mortgagee in the case at bar to prove that those recitals did not state the truth. *Gilson* v. *Nesson,* 208 Mass. 368, 370. *Way* v. *Greer,* 196 Mass. 237, 245, and cases cited. *Lait* v. *Sears,* 226 Mass. 119, 125. *Ely* v. *Wolcott,* 4 Allen, 506.

It remains to examine two cases upon which the plaintiff chiefly relies. The first of these is *Feuer* v. *Capilowich,* 242 Mass. 560. In that case the advertisement of foreclosure of the junior mortgage stated expressly that the premises were subject to a first mortgage for $4,000, and that the "premises will be conveyed, subject to all mortgages of record . . . and any and all encumbrances which have priority over"

the junior mortgage which was being foreclosed. The advertisement of foreclosure was read by the auctioneer at the sale, and no objection or comment was made. The auctioneer called for bids and the mortgagee bid $4,000. The attorney for the owner of the equity of redemption (a grantee of the mortgagor) then asked the mortgagee the amount of his interest in the property and the mortgagee replied, "$4,700," which was in truth the face of his mortgage note. That attorney then bid $4,700. The mortgagee thereupon bid $5,000. No other bids were made. The auctioneer declared the property sold to the mortgagee. The auctioneer then demanded of the mortgagee $300, which according to the terms stated in the advertisement of foreclosure must be paid at the time and place of sale, and it was paid by the mortgagee. No further explanation of the sale was given by the auctioneer and no other questions were asked by any of the parties present, until after the auctioneer had declared the property sold to the mortgagee. In those circumstances evidence of the undisclosed intent of the mortgagee in making his bid was held incompetent; and it was further held that as matter of law he must have intended under the circumstances to sell that which he had a right to sell, and that he was estopped to set up any different understanding or purpose on his part in becoming a purchaser at the sale held in his presence and under his supervision. He was rightly held to be so estopped because his words and conduct were calculated to lull the representative of the mortgagor, present at the sale and bidding, into a belief that the sale was being conducted as advertised and was subject to and did not include the first mortgage in the amount of the final bid, on the basis of which the deed was executed and delivered. Thus there were present all the essential elements of estoppel as set forth in *Boston & Albany Railroad* v. *Reardon*, 226 Mass. 286, at page 291. The case at bar has no elements of estoppel. It is clearly distinguishable from *Feuer* v. *Capilowich*.

The second case upon which the plaintiff relies is *Antonellis* v. *Weinstein*, 258 Mass. 323. In that case the

plaintiffs were judgment creditors of the owner of the equity of redemption of the land on which the third mortgage was foreclosed, and they had levied on the land and thereby acquired a lien prior to the foreclosure sale. The advertisement stated that the land would be sold subject to a first mortgage of $4,000 and to a second mortgage of about $4,100. The affidavit of the foreclosure sale and the deed delivered and recorded pursuant to the foreclosure each stated in substance that the premises were sold for $9,050, which price included the first and second mortgages then outstanding. That statement in both the affidavit of sale and the foreclosure deed was an attempt to give to the sale and deed a scope quite outside the limits authorized by the statute. The sale could not include the two prior mortgages. The mortgagee did not own them and had not advertised to sell them. The ruling of the trial judge that, " so far as the plaintiffs' rights are concerned, the sale could not . . . include the first and second mortgages, and that the defendant must account to the plaintiffs out of the amount bid by him to the extent of their liens," was upheld. That case is different in its facts from the case at bar. That case has been distinguished in *Goldman* v. *Damon*, 272 Mass. 302, at pages 306–307, and in *Chute* v. *Cronin*, 273 Mass. 471, at page 474. It must be regarded as confined to its particular facts and as limited by the underlying principles on which this decision rests.

The result is that the order is

*Decree affirmed with costs.*