In re MASSACHUSETTS AUTOMATIC TRANSMISSIONS, INC., Debtor.

Paul COLLETTI and East Weymouth Savings Bank, Plaintiffs,

v.

MASSACHUSETTS AUTOMATIC TRANSMISSIONS, INC., Defendant.

Bankruptcy No. 83–01555–HL.
Adv. No. A83–0892.

United States Bankruptcy Court, D. Massachusetts.

Dec. 22, 1983.

---

Karen L. Bisaccio, Moulton, Looney & Grossman, Boston, Mass., for plaintiff Colletti.

Kevin W. Gaughen, Gaughen, Gaughen & Lane, East Weymouth, Mass., for plaintiff East Weymouth Sav. Bank.

A. Russell Lucid, Braintree, Mass., for debtor/defendant.

## MEMORANDUM ON DEBTOR'S LACK OF INTEREST AFTER FORECLOSURE SALE

HAROLD LAVIEN, Bankruptcy Judge.

This matter came before the Court on December 2, 1983 on a motion for relief from stay and a complaint requesting declaratory judgment, injunctive relief, and damages. Movant is the East Weymouth Savings Bank ("the Bank"), the holder of a first mortgage on property located at 886 Washington Street, Weymouth, Massachusetts ("the Property"), which was sold at a foreclosure sale on November 4, 1983. The Chapter 11 filing occurred six (6) days later, on November 10, 1983. Plaintiff in the complaint for declaratory judgment is Paul Colletti, the purchaser of the property at the November 4th foreclosure sale. The essence of both the motion and the complaint is that Massachusetts Automatic Transmissions, Inc., the debtor-defendant, had no interest in the property, legal or equitable, at the time of filing and, therefore, the automatic stay does not apply. Debtor answers, in short, that the foreclosure was invalid and, therefore, it holds an equitable, if not legal, interest in the property. After a hearing on the matter on December 2, 1983, the parties were given an opportunity to file briefs. Accordingly, upon a review of the applicable authority, I find and rule as follows:

On May 20, 1983, Frank Salvaggio, then the owner of the property, granted a first mortgage to the Bank. The underlying note was in the amount of $100,000, with an interest rate of 18½% per annum. Mr. Salvaggio then executed two additional notes and mortgages to two unrelated third parties. Finally, that same day, Mr. Salvaggio conveyed the property to the debtor, Massachusetts Automatic Transmissions, Inc.

On May 2, 1983, the Bank, asserting that the note was in default, accelerated its note and made its note immediately due and payable.[1] On June 2, a complaint was filed against the debtor in Norfolk Superior Court, seeking authority to foreclose its mortgage by exercising its power of sale as set forth in its mortgage. On July 15, 1983, a judgment was entered by the Superior Court against the debtor.

A foreclosure auction was first scheduled for August 19, 1983. At the request of the debtor, the auction was continued to August 26, 1983. At this foreclosure auction, the property was sold, after lively bidding by four bidders, for $178,000 to one Anthony Strangie. At this time, Mr. Strangie paid a deposit of $3,000, the balance being due within 20 days. Some 19 days later, Mr. Strangie was granted an additional 20 days to arrange financing after he made an additional deposit of $7,000. Mr. Strangie, however, was unable to arrange financing and defaulted upon his deposit.

A second foreclosure sale was held on November 4, 1983. At that time, the property was sold to Paul V. Colletti for $183,000. Subsequently, on November 10, 1983, the debtor filed a Chapter 11 bankruptcy petition and notified the Bank of the automatic stay. The debtor also listed the property as an asset of the estate in its schedules. Accordingly, the Bank filed a motion for relief from stay and the second purchaser, Paul V. Colletti, filed a complaint for declaratory judgment.

---

1. As of November 15, 1983, the Bank claimed an outstanding balance on the first mortgage totaling $118,379.19, which included costs and interests. The outstanding balances on the second and third mortgages total $133,520.25, according to the debtor's schedules.

The issue before the Court is whether the bankruptcy estate retains any interest in the property. Section 541(a) of the Bankruptcy Code, 11 U.S.C. § 541, states in part:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

As a threshold matter, legal and equitable interests in property generally are determined by reference to state law. *Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979), see also *In re Turner,* 29 B.R. 628, 630 (Bkrtcy.D.Me. 1983), *In re Shea Realty, Inc.,* 21 B.R. 790, 791 (Bkrtcy.D.Vt.1982). Accordingly, this Court must look to Massachusetts law to evaluate the debtor's interest in the property.

Under Massachusetts law, the debtor would have no interest in the property after a proper foreclosure sale. *Outpost Cafe, Inc. v. Fairhaven Savings Bank,* 3 Mass. App. 1, 322 N.E.2d 183 (1975). In that case, six days after a foreclosure sale at which the highest bidder put down an appropriate deposit and entered into a memorandum sale, the plaintiff, the former owner, tendered to the defendant—mortgagee, an amount which was claimed to be in excess of the amount then due under the mortgage in an attempt to redeem the property in question. The Court, after a review of relevant Massachusetts cases, held that the

plaintiff's equity of redemption was barred ... at least as early as the point in time when the memorandum of sale was executed with the purchaser at the foreclosure sale.

*Id.* at 7, 322 N.E.2d 183; *see also White v. Macarelli,* 267 Mass. 596, 166 N.E. 734 (1929),

[i]f a foreclosure sale is fairly conducted and there is no defect in the proceedings, the right of the intervener to redeem is gone when the contract of sale was made with the purchaser at the auction,

*id.* at 598–99, 166 N.E. 734; *Schanberg v. Automobile Ins. Co. of Hartford,* 285 Mass. 316, 318, 189 N.E. 105 (1934), "the equity of redemption ... [is] barred as soon as the property ... [is] knocked down at the foreclosure sale."

The debtor does not contest that its equity would have been dissolved under the rule of *Outpost Cafe* if the mortgage and note were valid and the sale properly conducted. Instead, the debtor, in its answers to the motion for relief from stay and the complaint for declaratory judgment, asserts that the note and mortgage were usurious pursuant to Mass.Gen.Laws ch. 271 § 49 and therefore invalid. This line of reasoning, however, appears to have been abandoned in its brief—and for good reason. Mass.Gen.Laws ch. 271 § 49(e) states that:

[t]he provisions of this section shall not apply to ... any lender subject to control, regulation or examination by any state or federal regulatory agency.

The East Weymouth Savings Bank is such an agency.

Defendant's brief, however, takes for the first time,[2] a different tack—it merely argues that the debtor was not in default of the mortgage and underlying note. The essence of this argument is contained in a civil action filed by the debtor against the Bank at Norfolk Superior Court on December 5, 1983, three days after this Court's hearing on this matter.[3]

---

**2.** These defenses were not pleaded by the debtor nor were they argued at the December 2nd hearing. If a party knows of a defense, it must be seasonably pleaded. *See, e.g., Bernard v. U.S. Aircoach,* 117 F.Supp. 134, 137–8 (S.D.Cal. 1953); *Phillips v. Baker,* 121 F.2d 752 (9th Cir.1941), *cert. den.* 314 U.S. 688, 62 S.Ct. 301, 86 L.Ed. 551 (1942); *J.F. White Contracting Co.*

*v. New England Tank Indus. of N.H.,* 393 F.2d 449, 451 (1st Cir.1968). The Court, however, in the interests of completeness, will treat these issues in its decision.

**3.** The Court need not be concerned that the Superior Court action has not been removed to the Bankruptcy Court—the validity of the fore-

Plaintiff asserts that, at the time of the second foreclosure sale, only $27,750 in interest was owed by the debtor. He asserts that this amount was satisfied by payment of $28,159.73—$18,159.73 as direct payments by the debtor and application of the $10,000 forfeited deposit. Debtor's assertion that the forfeited deposit be applied is an imaginative but meritless argument. Analysis of the law and facts makes clear that the debtor's description of the deposit as the equivalent of a current payment of overdue interest by the debtor is nothing more than an euphemistic characterization by counsel.

First, the Bank is under no duty to apply the deposit towards interest. Their only duties are:

> ... that they receive not only the purchase money of the final sale but also the deposit on the uncompleted ones. In executing that power they were bound to use every reasonable means to obtain the full value of the property. After the payment of all that was owed to them and secured by the mortgage, including the attorney fees and other foreclosure expenses, they hold the surplus as trust property and must account for it to the [parties] in interest.

*Dennett v. Perkins,* 214 Mass. 449, 101 N.E. 994, 995 (1913). *See, also, Barry v. Dudley,* 282 Mass. 258, 184 N.E. 815 (1933); *Goldman v. Damon,* 272 Mass. 302, 172 N.E. 226 (1930); *Pilok v. Bednarski,* 230 Mass. 56, 119 N.E. 360 (1918).

Moreover, debtor's basic premise that only $27,750 in interest was due at the time of the second foreclosure is fatally flawed. Aside from the fact that costs, including the foreclosure sale costs, are certainly due, debtor overlooks the acceleration of the note on May 2, 1983, which made the amount in default and due at time of foreclosure not $27,750, but $118,379.19 plus additional interest, costs and attorney fees. Under such circumstances, there is no possibility, no matter how applied, that the ap-

plication of the forfeited deposit could satisfy the amount due.

Finally, the debtor alleges that the sums claimed as due by the Bank amount to a rate of interest that is in excess of the underlying note's called for 18½%. Such an allegation, even if it has merit, something this Court may subsequently need to determine in an accounting of any surplus, is not relevant as an issue in seeking to void the foreclosure sale. The law in Massachusetts is clear that the validity of a foreclosure sale cannot be attacked by the mortgagee when he requests an accounting of alleged surpluses. *Davis v. Newburyport Five Cents Savings Bank,* 311 Mass. 377, 41 N.E.2d 188 (1942); *Brooks v. Bennett,* 277 Mass. 8, 177 N.E. 685 (1931). Clearly, the debtor does not attack the validity of the first foreclosure sale—he seeks to apply the forfeited deposits from that sale for his own purposes. Thus, even if the issue for any of these additional reasons had been raised at the hearing and not belatedly in the debtor's brief, they would not have presented any defect in the foreclosure sale. *Brooks v. Bennett,* 277 Mass. 8, 15–16, 177 N.E. 685 (1931).

Accordingly, there is no need to grant relief from stay to the East Weymouth Savings Bank in order for it to complete the transfer of the property to Paul Colletti since the estate had no interest, legal or equitable, in the real estate at the time of filing; *see In re Moore,* 20 B.R. 670, 9 B.C.D. 159 (9th Bkrtcy.App.1982), and judgment is granted to Paul Colletti whereby the Court declares that the property is not property of the debtor's estate and that he is the purchaser of the same.

---

closure is in front of this Court as issues in the motion for relief from stay and the complaint for declaratory judgment. *Cf. In re Richards*

*Pontiac Inc.,* 6 B.R. 773, 777 (Bkrtcy.E.D.N.Y. 1980) *with In re Jolly Joint, Inc.,* 23 B.R. 395 (Bkrtcy.E.D.N.Y.1982).