NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-1943                                    Appeals Court

HAROLD B. MURPHY, trustee,[1] vs. WACHOVIA BANK OF
DELAWARE, N.A., & another.[2]

No. 13-P-1943.

Middlesex.     November 12, 2014. - August 13, 2015.

Present:  Kafker, Cohen, & Milkey, JJ.


Mortgage, Real estate, Foreclosure, Assignment, Junior lien.
    Real Property, Mortgage. Judicial Estoppel.



    Civil action commenced in the Superior Court Department on
May 29, 2008.

    The case was heard by Dennis J. Curran, J.


    David M. Bizar for Wachovia Bank of Delaware, N.A.
    John C. Elstad for the plaintiff.


    COHEN, J.  This case concerns the proper distribution of

surplus funds after a foreclosure sale initiated and conducted

by the holder of a second mortgage.  After a jury-waived trial,

_____

    [1] Of the bankruptcy estate of Nigel Thorpe.

    [2] John A. Dunnery, in his capacity as vice-president of
Wachovia Bank.

a judge of the Superior Court ruled that defendant Wachovia Bank of Delaware, N.A. (Wachovia), erroneously distributed surplus funds to the holder of the first mortgage, Wells Fargo Bank, N.A. (Wells Fargo), instead of to the mortgagor, Nigel Thorpe. The judge therefore ordered Wachovia to pay $178,626.61, plus interest and costs, to the plaintiff, Harold B. Murphy, as trustee of the bankruptcy estate of Thorpe (trustee). On appeal, Wachovia argues that it was entitled to disburse the funds to Wells Fargo, but even if it was not, it had valid equitable defenses to the trustee's claims.[3] For the reasons that follow, we affirm.

Background. We summarize the judge's findings, supplemented by additional undisputed facts.[4] Prior to the foreclosure sale, Thorpe was the owner of residential property in Wilmington. The property was encumbered by two mortgages: a first mortgage dated March 23, 1999, held by Wells Fargo, and a second mortgage, dated July 26, 2000, held by Wachovia.

In March, 2006, Thorpe defaulted on the payment obligations secured by the second mortgage, and Wachovia exercised its

---

[3] Wachovia informed us that, as of March 20, 2010, it merged into and became a part of Wells Fargo. The merger is irrelevant to the issues presented.

[4] Wachovia does not challenge the judge's findings, and most of the facts presented were stipulated.

statutory power of sale to foreclose on the property.[5]  The
notice of sale to Thorpe and to any potential buyers provided
that "[b]y virtue and in execution of the Power of Sale
contained in [the second mortgage], . . . [t]hese premises will
be sold and conveyed subject to . . . all unpaid . . . liens or
existing encumbrances of record which are in force and are
applicable, having priority over said mortgage."

On July 25, 2006, Wachovia conducted a foreclosure auction.
At that time, the outstanding debt secured by the Wachovia
mortgage was $130,000, and the outstanding debt secured by the
Wells Fargo mortgage was slightly more than $178,000.  The
Coniston Group, Inc. (Coniston), submitted a winning bid of
$420,000, and transmitted a $10,000 deposit to Wachovia's
attorney.  Coniston's bid was substantially lower than the
appraised value of the property, which was between $610,000 and
$690,000, and did not include an amount to discharge the Wells
Fargo mortgage.

The sale closed on August 25, 2006, with Coniston's
attorney acting as settlement agent.[6]  Wachovia received

---

[5] At that time, Thorpe also was in default on the loan
payments secured by the first mortgage.  One week after Wachovia
initiated foreclosure, Wells Fargo commenced its own separate
foreclosure proceeding, but this process was never completed.

[6] Wachovia does not contend that the role played by
Coniston's attorney in the closing relieved Wachovia, as the

$231,373.79, which exceeded by $64,502.96 the amount needed to satisfy the second mortgage debt plus Wachovia's costs of foreclosure. In addition, Coniston's $10,000 deposit remained in the possession of Wachovia's attorney. Although Wells Fargo was not a party to the foreclosure proceedings, it received $178,626.61, the amount required to discharge the first mortgage. Wells Fargo obtained this disbursement even though both the contract of sale and the foreclosure deed contained provisions stating that the property was being conveyed "subject to all outstanding . . . liens." The end result was that both the first and second mortgages were paid off, Coniston took the property free and clear of the first mortgage despite the terms of the sale, and Wachovia received funds that exceeded the combined mortgage debt and costs of foreclosure.

In a letter dated January 23, 2007, Thorpe demanded of Wachovia payment of all surplus foreclosure proceeds, including the amount disbursed to Wells Fargo. By means of two payments ($64,502.96 on March 12, 2007, and $10,000 on March 16, 2007), Wachovia transmitted to Thorpe the excess funds it had received and retained. Thorpe's further claim, that Wachovia wrongly

---

foreclosing mortgagee, of the responsibility to make a proper disbursement of the surplus funds. See G. L. c. 183, § 27.

paid off the Wells Fargo mortgage and, therefore, owed him an additional $178,626.61, remained unresolved.[7]

While these events were taking place, Thorpe and his wife were engaged in divorce proceedings in the Middlesex Division of the Probate and Family Court Department. Throughout the divorce proceedings, which were not concluded until June, 2007,[8] Thorpe never disclosed his claims against Wachovia or the fact that, in March of 2007, Wachovia had paid him $74,502.96.

In January, 2008, Thorpe filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code and a schedule of assets and liabilities. Thorpe again failed to disclose both the $74,502.96 that he had received from Wachovia, and his additional claim against Wachovia for $178,626.61. Ultimately, the trustee determined that there were no nonexempt assets available for distribution to creditors. As a result, in April of 2008, a judge of the United States Bankruptcy Court for the District of Massachusetts discharged Thorpe's scheduled liabilities, totaling $888,000, and closed the case.

---

[7] Both parties acknowledged at oral argument that the payments to Thorpe in March, 2007, were not in full satisfaction and release of Thorpe's claims against Wachovia.

[8] The judgment of divorce nisi did not become final until June 13, 2007.

On May 29, 2008, Thorpe commenced the present action in the Superior Court; however, because he had failed to disclose his claims against Wachovia during the bankruptcy proceedings, a judge later determined that he was not the true owner of the claims and could not enforce them.[9]  The judge ordered Thorpe to notify the Bankruptcy Court and the trustee, and, on August 17, 2011, the trustee was allowed to be substituted as the plaintiff.

By the time of trial, various theories of recovery had been rejected on summary judgment, and the only live issue was whether Wachovia had deprived Thorpe of his legal right to the funds disbursed to Wells Fargo, in violation of G. L. c. 183, § 27, and the terms of the mortgage.  After a bench trial based largely on stipulated facts, the trial judge concluded that Wachovia had been required to disburse the surplus to Thorpe, and that Wachovia's equitable defenses, which were based upon Thorpe's misrepresentations in the divorce and bankruptcy cases, were not an impediment to the trustee's claims on behalf of

---

[9] See Jeffrey v. Desmond, 70 F.3d 183, 186 n.3 (1st Cir. 1995) ("[B]y operation of 11 U.S.C. § 554[c] and [d], any asset not properly scheduled remains property of the bankrupt estate, and the debtor loses all rights to enforce it in his own name").

Thorpe's creditors.[10]  Judgment entered for the trustee, and Wachovia's appeal ensued.

Discussion.  1.  Disbursement of surplus funds.  Wachovia does not challenge the judge's findings; it claims only that the judge erroneously ruled that the excess funds should not have been disbursed to Wells Fargo.  We review the judge's legal conclusions de novo.  See, e.g., Martin v. Simmons Properties, LLC, 467 Mass. 1, 8 (2014).

"Generally, a mortgagee must give a mortgagor any surplus generated at a foreclosure sale."  Duclersaint v. Federal Natl. Mort. Assn., 427 Mass. 809, 811 (1998), citing G. L. c. 183, § 27.[11]  See Goldman v. Damon, 272 Mass. 302, 305 (1930).  Here, Wachovia offers two alternative justifications for departing from this general rule.  The first is that the language in the power of sale clause of the second mortgage expanded the universe of those entitled to receive the surplus to include the first mortgagee, Wells Fargo; the second is that Wells Fargo

---

[10] At oral argument, we were informed that one of those creditors is Thorpe's ex-wife.

[11] The statute reads:  "The holder of a mortgage of real estate, or his representatives, out of the money arising from a sale under the power of sale shall be entitled to retain all sums then secured by the mortgage, . . . including all costs, charges or expenses incurred or sustained by him or them . . ., rendering the surplus, if any, to the mortgagor, or his heirs, successors or assigns, unless otherwise stated in the mortgage." G. L. c. 183, § 27.

was required to be treated as a successor or assignee of Thorpe. Neither justification is sound.

a.  Power of sale clause.  The power of sale clause in the second mortgage provides in relevant part:  "The proceeds of the sale shall be applied in the following order:  (a) to all reasonable costs and expenses of the sale, including reasonable attorneys' fees and costs of title evidence; (b) to all sums secured by this Mortgage; and (c) the excess, if any, to the person or persons legally entitled thereto" (emphasis supplied). According to Wachovia, Wells Fargo was "legally entitled" to the surplus funds because its interest was superior to Thorpe's and attached not only to the property but also to the proceeds of any sale.

It is firmly established, however, that a buyer at a foreclosure sale initiated by a junior mortgagee takes the land subject to any senior mortgage or lien.  See G. L. c. 244, § 14;[12] Dearnaley v. Chase, 136 Mass. 288, 289 (1884) ("[The

---

[12] This statute provides in relevant part:  "A notice of sale . . . published in accordance with the power in the mortgage and with this chapter, together with such other or further notice, if any, as is required by the mortgage, shall be a sufficient notice of the sale; and the premises shall be deemed to have been sold and the deed thereunder shall convey the premises, subject to and with the benefit of all restrictions, easements, improvements, outstanding tax titles, municipal or other public taxes, assessments, liens or claims in the nature of liens, and existing encumbrances of record created prior to the mortgage, whether or not reference to such restrictions, easements, improvements, liens or encumbrances is

junior mortgagee] had a right to sell what was conveyed to him by his mortgage, which was the land subject to the prior mortgage"); Antonellis v. Weinstein, 258 Mass. 323, 326 (1927) ("It is plain that the [junior mortgagee's] sale in the present case could not legally include prior mortgages"); Marshall v. Francis, 332 Mass. 282, 285 (1955) (foreclosure by junior mortgagee had no effect on senior mortgagee).  See also Osborne, Mortgages § 323, at 674 (2d ed. 1970) ("A junior mortgagee's security is the property subject to prior encumbrances"). Accordingly, "[t]he bids made at [a foreclosure] sale must be for that which is to be sold and for that alone; that is to say, the bids must be for the value of the interest in the estate which will pass under the foreclosure deed.  If there are prior mortgages, these cannot be sold, and their amount ought not to be included in the bids."  Brooks v. Bennett, 277 Mass. 8, 16 (1931).

As the judge found, the admonition in Brooks v. Bennett was heeded here:  the notice of sale specified that the property would be sold subject to prior liens; consistent with that understanding, Coniston's bid of $420,000 was substantially less

---

made in the deed; provided, however, that no purchaser at the sale shall be bound to complete the purchase if there are encumbrances, other than those named in the mortgage and included in the notice of sale, which are not stated at the sale and included in the auctioneer's contract with the purchaser" (emphasis supplied).  G. L. c. 244, § 14.

than the appraised value of the property and, as the judge found, did not include an amount to discharge the Wells Fargo mortgage; the transaction concluded with a foreclosure deed setting forth $420,000 as the consideration for the interests that passed under the foreclosure deed; and that deed expressly stated that those interests were subject to outstanding liens. In these circumstances, where Coniston took the property subject to the Wells Fargo mortgage, Wells Fargo was not "legally entitled" to a distribution of surplus funds.[13]

b. Successor or assignee. There is "well established case law that recognizes an equitable lien in the surplus proceeds of a foreclosure sale in junior mortgagees" (emphasis supplied). First Colonial Bank for Sav. v. Bergeron, 38 Mass. App. Ct. 136, 138 (1995), citing Dennett v. Perkins, 214 Mass. 449, 451

---

[13] Citing Chute v. Cronin, 273 Mass. 471 (1930), Wachovia also argues that even if Wells Fargo was not legally entitled to the payment, it would be inequitable to hold Wachovia liable for the mistake. However, Chute is significantly different from the present case. In Chute, a second mortgagee foreclosed, made the winning bid, and paid off both his own and the first mortgage, thereby taking the property free of liens. Id. at 473-474. The Supreme Judicial Court held that the mortgagor's bankruptcy trustee was not entitled to recover from the foreclosing mortgagee the surplus over the amount of the second mortgage. Id. at 474. As the court later explained in Brooks v. Bennett, supra at 16-17, central to its decision in Chute was that the successful bid was made and intended to absorb the debt secured by the first mortgage as well as the debt secured by the mortgage being foreclosed, and that no one had been misled. That was not the case here.

(1913), and Pilok v. Bednarski, 230 Mass. 56, 58 (1918).  The junior mortgagee is considered to be the mortgagor's successor or assignee, and, hence, entitled to surplus proceeds under the terms of G. L. c. 183, § 27.  Ibid.  Although this principle has never been extended to a senior mortgagee, Wachovia urges us to apply it in this case.  We decline to do so.

The equitable rationale for according a junior mortgagee the status of successor or assignee is inapplicable to a senior mortgagee.  Unlike a junior mortgagee whose lien ordinarily will be extinguished by a senior mortgagee's foreclosure,[14] a senior mortgagee needs no equitable lien to protect itself during the foreclosure process.  If the senior mortgagee is the foreclosing party, it will be paid first; and, if a junior mortgagee is the foreclosing party, the senior mortgage will remain attached to the property.  See Brooks v. Bennett, supra.  If the buyer at a foreclosure sale fails to pay off the remaining debt on the senior mortgage, the senior mortgagee may foreclose.

Because Wells Fargo could expect that its mortgage would remain with the property, it had no right to share in the surplus funds of Wachovia's foreclosure.  See Thomas v. Haines,

---

[14] See Pehoviak v. Deutsche Bank Natl. Trust Co., 85 Mass. App. Ct. 56, 62-63 (2014) ("So long as timely and proper notice under G. L. c. 244, § 14, is given to junior lienholders, these subsequent liens are extinguished with the foreclosure of a senior mortgage lien; however, the junior lienholders' debts are not discharged").

285 Mass. 90, 94 (1933) ("[P]rior mortgages and liens do not carry a right in law or equity to any excess received in foreclosure of a subsequent mortgage"); Spaulding v. Quincy Trust Co., 313 Mass. 752, 753 (1943) (error to apply surplus to reduction of previous mortgages, because "surplus stood in the place of the equity of redemption previously existing, and belonged to the devisees of [the original mortgagor]"); Eno & Hovey, Real Estate Law § 10.21, at 335 n.2 (4th ed. 2004) ("Encumbrances prior to the mortgage being foreclosed . . . are not wiped out and have no right to share in the proceeds of the sale").  See generally Restatement (Third) of Property (Mortgages) § 7.4 comment c (1997) ("Senior lienors have no lien claim to junior foreclosure surplus").

2.  Equitable defenses.  Wachovia's remaining argument is that even if it improperly distributed the excess funds, the judge should have concluded that the trustee's claims are barred by the doctrines of unclean hands and judicial estoppel.  We discern no error or abuse of discretion.

a.  Unclean hands.  The doctrine of unclean hands denies equitable relief "to one tainted with the inequitableness or bad faith relative to the matter in which [he] seeks relief." Fidelity Mgmt. & Research Co. v. Ostrander, 40 Mass. App. Ct. 195, 200 (1996), quoting from United States v. Perez-Torres, 15 F.3d 403, 407 (5th Cir. 1994).  Here, it is questionable whether

the trustee is seeking equitable relief.  Unlike the cases cited by Wachovia, this is not an interpleader action requesting a declaration as to the parties' rights prior to the disbursement of the funds.  See, e.g., National Lumber Co. v. Canton Inst. for Sav., 56 Mass. App. Ct. 186, 188 (2002).  Rather, the trustee has asserted a claim for damages on account of breach of the mortgage contract and violation of statutory foreclosure procedures.  See G. L. c. 244, § 36, authorizing a mortgagor to bring a civil action to recover surplus funds.  See also Saggese v. Kelley, 445 Mass. 434, 444 (2005) (unclean hands principle "generally has no application to an action at law for breach of contract").

But even if we were to view the claim as equitable in nature, an unclean hands defense fails.  The conduct at issue -- Thorpe's failure to disclose his interest in the surplus in his divorce and bankruptcy cases -- is unconnected to Wachovia's erroneous distribution of surplus funds and did not "directly affect the claim being brought."  Amerada Hess Corp. v. Garabedian, 416 Mass. 149, 156 (1993), citing Flynn v. Haddad, 25 Mass. App. Ct. 496, 506 (1988).  Furthermore, there is no suggestion of any inequitable conduct on the part of the trustee or the creditors whose interests he seeks to protect.

b.  Judicial estoppel.  Wachovia argues that the trustee is judicially estopped by Thorpe's misconduct in his divorce

proceedings, i.e., his failure to disclose his claim to surplus funds or his receipt of partial payment from Wachovia.[15] "Judicial estoppel is an equitable doctrine that precludes a party from asserting a position in one legal proceeding that is contrary to a position it had previously asserted in another proceeding." Otis v. Arbella Mut. Ins. Co., 443 Mass. 634, 639-640 (2005) (citation omitted). Whether the doctrine should be applied to particular facts is committed to the discretion of the judge. See Sandman v. McGrath, 78 Mass. App. Ct. 800, 802 (2011). We defer to that discretion unless "we conclude the judge made a clear error of judgment in weighing the factors relevant to the decision, . . . such that the decision falls outside the range of reasonable alternatives." L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

There was no abuse of discretion here. Neither the trustee nor the creditors, who include Thorpe's ex-wife, took any

---

[15] In the trial court, Wachovia also relied on Thorpe's failure to make such disclosure in the bankruptcy proceedings. Recognizing that there is a substantial body of Federal law holding that a trustee is not subject to the defense of judicial estoppel where the debtor has engaged in fraudulent conduct in a bankruptcy court, Wachovia no longer presses this point. See Reed v. Arlington, 650 F.3d 571, 578-579 (5th Cir. 2011); Stephenson v. Malloy, 700 F.3d 265, 271-272 (6th Cir. 2012); Biesek v. Soo Line R.R. Co., 440 F.3d 410, 412-413 (7th Cir. 2006); Eastman v. Union Pac. R.R. Co., 493 F.3d 1151, 1155 n.3 (10th Cir. 2007); Parker v. Wendy's Intl., Inc., 365 F.3d 1268, 1272 (11th Cir. 2004). See also Graupner v. Brookfield, 450 F. Supp. 2d 119, 129 (D. Mass. 2006).

inconsistent positions or committed any wrongdoing.  The judge could conclude in his discretion that it would serve no equitable purpose to preclude the trustee from recovering money that Wachovia failed to distribute correctly.[16]

<u>Judgment affirmed</u>.

---

[16] In assessing the equities as between Thorpe's creditors and Wachovia, it bears noting that Wachovia's failure to properly disburse the proceeds of the foreclosure did not simply result in a windfall to Coniston.  Wachovia also advanced its own interests by retaining foreclosure proceeds in excess of the combined mortgage debt and foreclosure expenses.  Those surplus funds unquestionably were due to Thorpe, but were paid to him only after he made demand in January, 2007.