D5 Iron Works, Inc. (D5) appeals from a decision of a judge of the Superior Court awarding summary judgment to Danvers Fish & Game Club, Inc. (DFG), and dismissing D5's claims that DFG owes it $196,500 for work done as a subcontractor on a rifle range on DFG's property. For the reasons that follow, we affirm.
Hired by the general contractor, Patriot Range Technologies, Inc. (Patriot), to fabricate and install steel components for DFG's firing range, D5 completed its initial work on or about January 17, 2014, and submitted an invoice in the amount of $190,000, due on February 16, 2014. As authorized by Patriot, on or about February 3, 2014, D5 completed additional work on a conveyor system for the firing range and issued a bill for $6,500 due on March 5, 2014. Patriot made no payment to D5.
On February 28, 2014, D5 recorded a notice of subcontract on DFG's property, as required by G. L. c. 254, § 4. On March 18, 2014, D5 recorded an amended notice of subcontract asserting it was owed $196,500. On April 7, 2014, D5 filed a statement of account, as required by G. L. c. 254, § 8. D5 filed a second notice of contract and statement of account on December 19, 2014.
D5 asserts that in March, 2014, counsel for DFG stated that DFG intended to pay D5 in full for all work completed. Nonetheless, Richard Lidner, owner of D5, testified at his deposition that D5 pursued its rights under the mechanic's lien statute "in case things didn't pan out." D5 avers that, again, on April 29, 2014, DFG's president represented that D5 would be paid in full and D5 relied upon that representation and forbore on its lien rights. Lidner averred that "[w]e did not pursue our lien rights based on conversations that we had with the owner of [DFG]" who indicated D5 would be paid. Lidner repeatedly testified, however, that the only conversation he had with the president of DFG was in February of 2014. Then, on direct examination by his attorney, Lidner testified that he or his assistant, Jenn, also had conversations in March, 2014, with DFG. The record does not reflect that DFG conditioned any assurances of payment on D5 foregoing its rights under its mechanic's lien. DFG denies that it represented to D5 that it would pay for the work D5 had completed.
On May 14, 2014, DFG terminated its contract with Patriot and on May 23, 2014, commenced an action against Patriot seeking to recover costs for completing the project (DFG-Patriot litigation). DFG filed a request for a default judgment supported by its treasurer's February 2, 2015, affidavit that represented that DFG may be liable to D5 for $196,500 "relating to its purported mechanic's lien that has been recorded/filed on the property as a result [of] work it allegedly performed for" Patriot, and asked that the amounts it owed Patriot under their contract be reduced by the $196,500 owed to D5. On February 4, 2015, the court entered judgment, crediting DFG with the $196,500 it "may" owe to D5. The judge concluded that DFG had overpaid Patriot by $174,152.17 and awarded damages in that amount. So far as the record reflects, DFG did not suggest to the judge that D5's lien should have been dissolved as invalid or that it had other defenses to the debt reflected in the mechanic's lien. Rather, DFG allowed judgment to enter in the DFG-Patriot litigation, crediting DFG with payment of the $196,500 due to D5.
D5 commenced this action against DFG on February 3, 2015, seeking to recover under its mechanic's lien and asserting claims of breach of contract, intentional or negligent misrepresentation, and violation of G. L. c. 93A. The judge awarded summary judgment to DFG, concluding that the mechanic's lien was not valid because D5 failed to comply with statutory deadlines. The judge also found that D5 failed to raise a genuine question as to whether it reasonably relied on any representations by DFG that it would pay the amounts owed to D5 by Patriot.
Discussion. Mechanic's lien. "The primary purpose of [a mechanic's] lien is to provide security to contractors, subcontractors, laborers, and suppliers for the value of their services and goods provided for improving the owner's real estate.... At the same time, the statute contains filing and notice requirements to protect the owner and others with an interest in the property." National Lumber Co. v. United Cas. and Sur. Ins. Co. 440 Mass. 723, 726 (2004), quoting from Hammill-McCormick Assocs. v. New England Tel. & Tel. Co., 399 Mass. 541, 542-543 (1987). "A mechanic's lien is not a common-law right but a creature of statute, which 'compels strict compliance in order to obtain relief.' " National Lumber Co. v. Lombardi, 64 Mass. App. Ct. 490, 492-493 (2005), quoting from Mullen Lumber Co. v. Lore, 404 Mass. 750, 752 (1989). "The statute is strictly construed against the party claiming the lien." Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 644 (2002). "[R]eluctance to ruffle anyone's feathers by early notification, however understandable or common in the industry, does not change the plain meaning of the statute." BloomSouth Flooring Corp. v. Boys' & Girls' Club of Taunton, Inc., 440 Mass. 618, 624 (2003).
General laws c. 254, § 11, as amended through St. 1996, c. 364, § 11, provides that a mechanic's lien "shall be dissolved unless a civil action to enforce it is commenced within ninety days after the filing of the statement required by section eight." Even assuming all of D5's filing requirements were met by the March 18, 2014, filings, no action was commenced until February 3, 2015, well beyond the ninety-day enforcement period. To the extent D5 relies on its second notice of contract and statement of account filed December 19, 2014, that filing was untimely as it occurred at least eight months after D5 or Patriot had stopped doing work on the property. Moreover, once D5 chose to file its first notice of contract and statement of account but failed to file an enforcement action within the ninety days set forth in the statute, a second statement of account is without effect. See Mullen Lumber Co., 404 Mass. at 756. "There can be but one lien for the materials supplied and the filing of a second statement of account concerning the same materials neither extends the statutory period nor revives the lien if the statutory period has passed." Id. at 756-757.
D5 argued below that DFG should be judicially estopped from challenging the validity of D5's lien because DFG adopted the position in the DFG-Patriot litigation that the lien was valid. The judge disagreed, noting that DFG described the lien in the DFG-Patriot litigation as a "purported lien" and stated it "may" be liable to D5.
"Judicial estoppel is an equitable doctrine that precludes a party from asserting a position in one legal proceeding that is contrary to a position it had previously asserted in another proceeding." Murphy v. Wachovia Bank of Del., N.A., 88 Mass. App. Ct. 9, 16 (2015), quoting from Otis v. Arbella Mut. Ins. Co., 443 Mass. 634, 639-640 (2005). "As an equitable doctrine, judicial estoppel is not to be defined with reference to 'inflexible prerequisites or an exhaustive formula for determining [its] applicability.' " Otis, 443 Mass. at 640, quoting from New Hampshire v. Maine, 532 U.S. 742, 751 (2001). Two fundamental elements, however, are "widely recognized as comprising the core of a claim of judicial estoppel. First, the position being asserted must be 'directly inconsistent,' meaning 'mutually exclusive' of, the position asserted in a prior proceeding," and "[s]econd, the party must have succeeded in convincing the court to accept its prior position." Id. at 640-641, and cases cited. "Where the court has found in favor of that party's position in the prior proceeding, 'judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled.' " Id. at 641, quoting from New Hampshire v. Maine, 532 U.S. at 750.
We defer to the judge's discretion as to whether the doctrine of judicial estoppel should apply "unless 'we conclude the judge made a clear error of judgment in weighing the factors relevant to the decision, ... such that the decision falls outside the range of reasonable alternatives.' " Murphy, 88 Mass. App. Ct. at 16, quoting from L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014). Here, while the judge found that DFG described the mechanic's lien as "purported," she did not comment on the fact that DFG also requested and received a credit for the full amount of the lien. As D5 points out, even if DFG characterized the mechanic's lien as a "purported" lien in its complaint, there was nothing conditional about its request for damages. In essence, in the DFG-Patriot litigation, DFG was willing to ignore any defects in the mechanic's lien and any defenses to the underlying claim in order to receive a credit in the amount it owed to Patriot pursuant to their contract.
While we are persuaded, in these circumstances, that DFG should be estopped from denying that D5 had placed a mechanic's lien on its property and that DFG had received a credit from what it owed Patriot in the full amount of the lien, DFG did not make any assertions in the DFG-Patriot litigation about the validity of the mechanic's lien going forward. Whether or not D5 had a valid mechanic's lien, D5 failed to timely file an appropriate action to enforce the lien and nothing in the DFG-Patriot litigation alters that fact. Indeed, by the time DFG requested the credit in its February 2, 2015, affidavit in support of assessment of damages against Patriot, D5 had already missed the deadline to file a complaint to enforce its lien. Under the theory of recovery D5 pursued in this litigation, principles of judicial estoppel are unavailing.
In finding that judicial estoppel does not apply, the judge noted that she offered no opinion as to whether D5 has a remedy for any unjust enrichment of DFG resulting from execution of its judgment against [Patriot] and expressly granted leave to D5 "to amend its complaint to assert such a claim should the facts support it." See Mike Glynn & Co. v. Hy-Brasil Restaurants, Inc., 75 Mass. App. Ct. 322, 329-330 (2009) (noting Restatement of Restitution and tendency in modern cases to allow subcontractors to bring claims against party who retains benefit of performance without paying anybody for it despite general rule that in absence of action pursuant to a mechanic's lien, owners are not liable to subcontractors). While we are sympathetic to D5's circumstances, we take no position on the merits of a claim for unjust enrichment. Indeed, such a claim is not before us.
Misrepresentation. There is nothing in the record to suggest that DFG made representations that caused D5 to forbear on its remedies under the mechanic's lien statute. D5 pursued its lien despite early assurances from DFG that D5 would be paid. We agree with the motion judge and see nothing in subsequent assurances that would have caused D5 to change its course and give up its right under the lien.
Judgment affirmed.